**Mylon C. CROSS, Petitioner–Appellant,**

v.

**Michael F. O'LEARY, Warden, Stateville Correctional Institution, et al., Respondents–Appellees.**

No. 89–1659.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1990.

Decided March 5, 1990.

Rehearing and Rehearing En Banc Denied April 13, 1990.

Frederick F. Cohn, Chicago, Ill., for petitioner-appellant.

David E. Bindi, Terence M. Madsen, Asst. Attys. Gen., Chicago, Ill., for respondents-appellees.

Before POSNER and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

PER CURIAM.

Twelve years ago Christine Martins fled from the DeGrace Hotel in Chicago. It was 4:00 a.m.; she was hysterical, naked, bleeding from wounds recently received, and screaming that she had been raped; Mylon Cross and Ronald Williams were in hot pursuit. Martins escaped her pursuers; Cross and Williams did not escape the bystanders who pursued them in turn. Williams did not testify at trial. Cross did and insisted that he had been asleep in the room while Williams beat and raped Martins. The jury, unimpressed, convicted both of rape and deviate sexual assault. *People v. Williams*, 94 Ill.App.3d 241, 49 Ill.Dec. 820, 418 N.E.2d 840 (1st Dist.1981). Since 1982 Cross has been seeking collateral relief on the ground that he received ineffective assistance of counsel.

The nub of the contention is that his lawyer did not interview witnesses who could have assisted the defense. The district court agreed, but we reversed because, in the absence of information about what the missing witnesses would have said had they testified, it was not possible to conclude that Cross had suffered prejudice from any lapses of his attorney. *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008 (7th Cir.1987). We did not decide whether counsel's efforts fell below the required standard and remanded for fur-

ther proceedings, observing, *id.* at 1016 (footnote omitted):

> The focus of the inquiry [into prejudice] must be on what information would have been obtained from such an investigation and whether such information ... would have produced a different result. Under usual circumstances, we would expect that such information would be presented to the habeas court through the testimony of the potential witnesses.... Therefore, if the potential witnesses are not called, it is incumbent on the petitioner to explain their absence and to demonstrate, with some precision, the content of the testimony they would have given at trial. The district court simply cannot fulfill its obligation under *Strickland* to assess prejudice until the petitioner has met his burden of supplying sufficiently precise information.

Cross contended that witnesses could have verified that no loud noises were heard by others in the hotel, which would have supported his defense that he slept through the incident. He also said that witnesses could have confirmed that no other residents of the hotel complained (Martins said that some had), and that police officers could have supported his version of a meeting with Martins a month before the rape. On remand, however, he produced no such witnesses, explaining that the hotel had burned down and police records had been lost in the intervening years, hampering his new lawyer's search for evidence. Our earlier opinion holds that speculation about what unidentified persons might have said cannot establish the "prejudice" that, under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is part of the petitioner's burden.

Cross produced two witnesses on remand. One was Willie Taylor, then Martins' boyfriend and now her husband, and the other was Jewel Rollins, a desk clerk at the hotel. Both gave testimony that undermined aspects of Martins' testimony at trial. Martins said she was taken to the hotel against her will, and that as she entered she could feel a gun in her back. Rollins recalls that as they entered, Martins stood between Cross and Williams, but that Williams was perhaps four feet behind Martins and so could not have held a gun against her back. Although this was inconsistent with Martins' testimony, it was no revelation. Marie Bell, the other clerk, testified at the trial, and she too described a distance between Williams and Martins. Bell also testified that Martins did not appear agitated when she entered, and that she heard no unusual noises later. Moreover, the jury knew that the police did not find a gun in the room or on Williams' person. So the jurors had reason to doubt Martins' testimony to the extent she said she felt the barrel of a gun; additional testimony tending to show this—and also tending to confirm Martins' testimony that Williams positioned himself to prevent her escaping—would not have changed the dynamics of this trial.

Cross testified that he had been intimate with Martins before the rape, and although he denied having sex with her that day, prior intimacy would make more plausible his claim that Martins voluntarily accompanied him to the hotel. Cross also described a day when Martins had flirted with him in Taylor's presence at a Shell station, angering Taylor. Martins admitted "seeing" Cross in Taylor's presence but testified that "I ain't never been nowhere with" Cross. At the hearing after our remand, counsel offered Taylor's testimony to show that Martins, Taylor, and Cross had met at a Shell station. Counsel argues that this testimony, if introduced at trial, would have bolstered Cross's credibility and undermined Martins'.

The magistrate who conducted the evidentiary hearing, and whose conclusions the district judge adopted, thought that Taylor's evidence would have done little to affect the course of the trial. The incident took place a month before the rape, and no account of the meeting at the gas station could have undercut the fact that Martins was raped and beaten, or made more likely the assertion that Cross slept through it. Moreover, Taylor might well have undermined the defense on balance. He stoutly maintained that Martins had not flirted with Cross or left the Shell station with

him. In one of his two inconsistent versions of the Shell station incident, Taylor insisted that hostilities erupted over drug money, not the attentions of Martins. He was hostile to Cross, and the brutal rape of his future wife would not have inspired favorable testimony.

*Strickland* requires a petitioner to show prejudice from any inadequacy in the representation. As this case illustrates, it is hard to reconstruct after a decade what might have been. But this is the prisoner's burden, to be met by "sufficiently precise information". Other than speculation, Cross has only the testimony of Taylor and Rollins. We do not think the magistrate and district court committed clear error in concluding that there is no substantial likelihood that their testimony, if presented at trial, would have led to a different result. The state's case was strong, the defense implausible, and this testimony tangential to both.

AFFIRMED.