**UNITED STATES of America, ex rel. Billy McCALL, Petitioner–Appellee,**

v.

**James E. O'GRADY, et al., Respondent–Appellant.**

No. 89–2400.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1990.

Decided July 19, 1990.

Frederick F. Cohn, Chicago, Ill., for petitioner-appellee.

Richard S. London, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and PELL, Senior Circuit Judge.

BAUER, Chief Judge.

Petitioner Billy McCall was convicted of burglary and possession of a stolen van by an Illinois trial court in March, 1987. After

pursuing a direct appeal through the Illinois court system, McCall sought habeas corpus relief in the district court pursuant to 28 U.S.C. § 2254, claiming that he was denied his sixth amendment right to effective assistance of counsel. The district court granted McCall's § 2254 petition. *United States ex rel. McCall v. O'Grady,* 714 F.Supp. 374 (N.D.Ill.1989). For the reasons discussed below, we reverse and remand to the district court for further proceedings.

### I.

Petitioner Billy McCall was arrested and tried for the burglary and automotive theft committed at the vacant residence of Eugene Shepard, a Chicago police officer. Billy's brother, Joe McCall, was also arrested for and charged with the automotive theft, but the state dismissed charges against Joe on the first day of trial.

The primary evidence against Billy McCall was the testimony of Keenan Lett, a next-door neighbor to the victim. The day after the burglary, Lett told investigating officer Robert Tetti (according to Tetti's report) that he had "seen offenders [sic] car and victims [sic] van leave area but did not get a good look at offenders." Detective B. Campbell filed a supplementary report a few weeks later that recounted statements from Lett to Shepard, the victim. Campbell reported that Shepard had been told by Lett that he (Lett) "observed two unknown [black men] ... drive away from victims [sic] home along with the victims [sic] 1983 Chevrolet van.... [Lett] stated that he did not get a good look at offenders and probably couldn't identify them."

Over a month after the burglary, however, Lett identified Billy McCall from a set of six photographs as the driver of the stolen van, and picked out McCall at a lineup.[1] Lett also unequivocally identified McCall at the trial. McCall's trial counsel,

Diane Shelley, attempted to impeach Lett with the statements in the police reports. Her attempt faltered, however, when Lett flatly denied that he had stated to the police that he did not see and/or could not identify the persons in the van. The state promptly objected to the impeachment questions, and the trial court held a sidebar concerning the source for the questions. Both counsel for the State and Shelley appeared to agree that the source was Detective Campbell's supplementary report, which did not contain Lett's direct statements but rather the victim's recounting of these statements to Detective Campbell. Because the court determined that Shelley was asking Lett about statements not directly attributable to him, it sustained the State's objection and instructed the jury to disregard this entire line of questioning. Shelley did not pursue the impeachment attempt.

The other evidence against Billy McCall was that, when the stolen van was eventually recaptured, the license plate on it was registered to him. The officer who recaptured the van testified, however, that on both of the occasions on which he trailed and overtook the van, the only occupant he could identify was Joe McCall, not Billy. Also, the only identifiable fingerprints found in the van belonged to Joe.

For McCall's defense, Shelley presented several pieces of alibi evidence. James Coleman, who often employed McCall as a "part-time handyman," testified that he was "pretty sure" McCall worked for him on January 9, 1986, the date of the burglary. Coleman also testified that, two days after the burglary, he noticed that McCall's license plate was missing and warned him to do something about this because the streets had been posted for cleaning.[2] McCall himself was the only other defense witness. McCall testified that he did work for Coleman on January 9, but on cross-

---

1. As the district court noted, the record does not reveal whether Joe McCall was included in either the photo array or the lineup. *McCall,* 714 F.Supp. at 376.

2. The State presented a rebuttal witness from the Chicago Bureau of Street Cleaning who testified that in fact the streets were not posted for cleaning on January 11, 1986. This testimony likely served to reduce somewhat the exculpatory force of the alibi evidence.

exam he could not recall other specific dates during January on which he worked or didn't work. McCall also testified that, because of Coleman's warning, he reported to the police on January 11 that his license plates had been stolen. A police "Miscellaneous Incident Report" was produced which verified that McCall did indeed report the theft of his plates on January 11. The report did not contain the plate number, however, although McCall testified that he included it when he reported the theft to the police.

In closing argument, the State emphasized Lett's testimony and his identifications of Billy, as well as the weak points in Billy's alibi evidence. For the defense, Shelley emphasized the missing pieces in the State's case, (e.g., no witness saw McCall enter or leave the victim's house), but made no attempt to cast doubt on Lett's identification testimony. She also restated the alibi evidence, and suggested that maybe it was Joe McCall who committed the crimes, given that the officer who twice overtook the van identified Joe as the occupant.

The jury found Billy McCall guilty of both residential burglary and possession of a stolen motor vehicle, and the judge sentenced him to five years imprisonment.[3] Through his new, post-trial counsel, McCall filed a post-trial motion arguing that his trial counsel had afforded him ineffective assistance. The trial court denied the motion, and McCall's ineffective assistance argument suffered a similar fate before the Appellate Court of Illinois, which upheld his conviction. *People v. McCall*, No. 1–87–0789 (1st Dist. Aug. 9, 1988). The Illinois Supreme Court denied leave to appeal, and McCall, having exhausted his state court remedies, then filed the habeas petition at issue here.

## II.

McCall has challenged the performance of Shelley, his trial counsel, on two grounds: 1) because Shelley represented both petitioner and his brother prior to trial, she operated under a conflict of interest, and 2) because Shelley aborted the impeachment attempt without making use of Officer Tetti and/or his report, she afforded McCall ineffective assistance. The district court rejected the former, finding that McCall failed to meet his burden of providing specific record references that show an actual conflict adversely affecting his counsel's performance. *McCall*, 714 F.Supp. at 377–78. We agree.

 Joint representations do not constitute *per se* violations of the sixth amendment. *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978). Something more must be shown; where, as here, the trial court was not presented with a potential conflict known by the defendant, the defendant must prove *actual* conflict that affected the quality of the representation. *See Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *United States v. Acevedo*, 891 F.2d 607, 610 (7th Cir.1989). McCall has not shown this "something more." To the contrary, the record reflects that Shelley's pretrial representation of both McCall brothers did not hinder Shelley's defense of Billy McCall. Because the State dropped charges against Joe McCall before trial, Shelley represented only Billy at trial. During the trial, Shelley adduced the evidence that pointed to Joe: the police officer's testimony that Joe was the driver on the two occasions that he spotted the van, and the fact that the only identifiable prints found in the van belonged to Joe. In closing argument, Shelley pursued the defense theory that it was Joe McCall, not Billy, who committed the crimes. Accordingly, the district court's resolution of the conflict of interest issue was correct, and McCall's challenge thereto is rejected.

---

**3.** McCall was out on bond when he filed his habeas petition, which explains why he named Cook County Sheriff James E. O'Grady and Illinois Attorney General Neil F. Hartigan as respondents. *See* Rule 2(b), Rules Governing § 2254 Cases, 28 foll. § 2254. Apparently, McCall was in fact incarcerated for a time at the Vandalia Correctional Center after his conviction and sentence became final, *see McCall*, 714 F.Supp. at 375 n. 1, but, pursuant to the district court's order of July 3, 1989, McCall is currently again out on bond.

■ McCall's second challenge to his trial counsel's performance found success in the district court. In considering this challenge, the court first rejected the notion, relied upon by the Illinois appellate court, that the failure to impeach a state's witness cannot support an ineffective assistance of counsel claim. The court stated that, to the contrary, several decisions of this court establish that "defense counsel has not represented the defendant to the satisfaction of the Sixth Amendment when counsel fails to pursue an impeaching cross-examination or present additional evidence that would in all reasonable probability cast a reasonable doubt on the testimony of the government's main identification witness." *McCall,* 714 F.Supp. at 379. The court then found that "Shelley's failure to impeach Lett through the recorded statements in Officer Tetti's ... report deprived Billy of his right to the effective assistance of counsel." *Id.* at 380. Because the court did not have sufficient information to make this ruling, we reverse and remand.

Under the standard and principles established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a convicted defendant raising an ineffective assistance of counsel claim has the burden of establishing both that his counsel's performance was deficient and that the deficient performance prejudiced the defense. "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064. We employ a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, 104 S.Ct. at 2065, and a "strong presumption of reliability [of the outcome]." *Id.* at 696, 104 S.Ct. at 2069. Further, the Court has made it clear that the burden remains on the defendant to overcome these strong presumptions by affirmatively establishing both components of *Strickland's* two-part standard. *See Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305

(1986). *See also United States v. Slaughter,* 900 F.2d 1119, 1124 (7th Cir.1990).

Given these recognized burdens, habeas petitioners raising ineffective assistance claims undoubtedly must clear a "high hurdle." *Sullivan v. Fairman,* 819 F.2d 1382, 1391 (7th Cir.1987). "Indeed, we expect that few petitioners will be able to pass through the 'eye of the needle' created by *Strickland.*" *Id.* (quoting *Matthew* 19:24). Where the petitioner rests his claim of a sixth amendment violation on the failure of his trial counsel to adduce evidence or call witnesses, the petitioner cannot meet these burdens absent a specific, affirmative showing as to what the missing evidence or testimony would have been. In *United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1016 (7th Cir.1987), a case in which the petitioner claimed constitutional error in his counsel's failure to investigate, we stated the additional requirements for such claims as follows:

> [W]e cannot see how, especially in the context of a habeas proceeding that collaterally attacks the state court conviction, the petitioner's obligation can be met without a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result. Under usual circumstances, we would expect that such information would be presented to the habeas court through the testimony of the potential witnesses.... [I]f the potential witnesses are not called [before the district court], it is incumbent on the petitioner to explain their absence and to demonstrate, with some precision, the content of the testimony they would have given at trial.[2] The district court simply cannot fulfill its obligation under *Strickland* to assess prejudice until the petitioner has met his burden of supplying sufficiently precise information.

[2] The district court noted the existence of a police report of an interview with [a woman] who was not called as a witness. The mere existence of a police report setting forth, in

summary fashion, [the potential witness's] observations, without any explanation as to why she was not called in the habeas proceeding, is not sufficient....

(Citations omitted).[4] *See also United States v. DeBango,* 780 F.2d 81, 86 (D.C. Cir.1986) (defendant failed to establish prejudice component of *Strickland* because he failed to introduce evidence as to what the uncalled witness would have said had he testified).

In this case, the district court examined the trial record at length, but did not conduct an evidentiary hearing or take additional evidence from the parties. From its examination of the record, the court concluded that Shelley adopted the strategy of attempting to impeach Lett, but then "gave up after the court would not permit her to use Detective Campbell's" report. *McCall,* 714 F.Supp. at 380. The court also rejected, from its review of the record alone, the State's proffered reason for why Shelley may have decided not to use Officer Tetti's report: that the statements attributed to Lett therein are ambiguous, and Shelley chose not to use Tetti and/or his report because of this ambiguity. The court ruled that this suggestion by the State failed to adequately explain Shelley's "failure to perfect the impeachment of Lett with his prior inconsistent statement." *Id.* Because no evidentiary hearing was held, however, Officer Tetti was not called before the district court to verify what his trial testimony would have been, nor was an offer of proof made to present the court with this information. Neither was Shelley called to establish whether she in fact interviewed Officer Tetti, or whether she intentionally chose not to use him and/or his

report for the reason suggested by the state, or for some other strategic reason.[5]

In contrast, where habeas petitioners have been successful in raising such claims, they have made before the district court a specific, detailed showing as to the content of the evidence into which trial counsel should have investigated or which should have been presented to the jury, and, where necessary, a showing as to the reasons for trial counsel's failure to do so. *See, e.g., Harris v. Reed,* 894 F.2d 871 (7th Cir.1990) (reversing and remanding district court's denial of habeas writ based on a review of the evidence adduced at a three-day evidentiary hearing during which the district court took testimony from petitioner, his trial counsel and uncalled impeachment and alibi witnesses); *Montgomery v. Petersen,* 846 F.2d 407, 414–16 (7th Cir. 1988) (holding that habeas petitioner met burden to show prejudice by producing sworn testimony (from a different proceeding) of a specific, uncalled alibi witness and citing, at note 5, many other cases in which petitioners failed to make such a showing regarding uncalled witnesses); *Sullivan v. Fairman,* 819 F.2d 1382, 1385–87 (7th Cir. 1987) (habeas petitioner met burdens and established constitutional error in his defense counsel's failure to adequately investigate and adduce evidence by producing, at evidentiary hearing in the district court, testimony from his trial attorneys and the uncalled witnesses, among others). *See also United States v. Gray,* 878 F.2d 702, 712 (3d Cir.1989) (defendant met *Strickland*'s prejudice burden by offering testimony at post-trial evidentiary hearing of

---

4. On remand in *Cross,* the magistrate conducted an evidentiary hearing. Petitioner Cross produced only two witnesses, complaining that he would have produced others had a hotel fire and lost police records not hampered his new lawyer's search. The magistrate concluded that the two witnesses, had they testified, would have done little to affect the outcome of Cross's state trial, and the district court adopted this conclusion and denied Cross's petition. *See Cross v. O'Leary,* 896 F.2d 1099, 1100 (7th Cir. 1990). We affirmed, stating, "As this case illustrates, it is hard to reconstruct after a decade what might have been. But this is the prisoner's

burden [under *Strickland*], to be met by 'sufficiently precise information'." *Id.* at 1101.

5. Several additional reasons have been suggested as to why Shelley may have chosen not to use Officer Tetti and/or his report to impeach Lett. The State has suggested that Shelley could have chosen not to call Tetti because she interviewed him before the trial and determined that he could explain-away the statements he attributed to Lett in his report. McCall's new counsel has suggested that Shelley could have chosen not to call Tetti because she was concerned that a juror may have been related to Tetti. All of this, of course, is pure speculation.

key witness not interviewed by trial counsel).

McCall argues that an evidentiary hearing is not required in this case because the statements in Officer Tetti's report are *per se* evidence of constitutionally ineffective assistance by Shelley.[6] Neither the statements themselves nor the other record evidence support McCall's *"per se"* argument. As the State has argued, the statements in Officer Tetti's report are somewhat ambiguous. Tetti reported that Lett stated that he saw "offenders [sic] car and victims [sic] van leave area but did not get a good look at offenders." It is unclear from the face of this statement whether Lett meant that he did not get a good look at the person(s) in the offender's car, the victim's van, or both. Further, without Shelley's testimony or some offer of proof concerning her conduct, it remains unclear whether she might have had a reason for not calling Officer Tetti. Contrary to the district court's suggestion, see *McCall*, 714 F.Supp. at 380, the burden of this ambiguity falls not on the State but on McCall. The State has no burden to provide a "rationale" for Shelley's "failure." Rather, it is McCall who must come forward with "sufficiently precise information" (i.e. testimony by Shelley and/or Officer Tetti or the equivalent thereto) to establish that Shelley's aborted impeachment attempt was indeed a "failure" and not a strategic decision. *See Cross*, 811 F.2d at 1016.

Thus, McCall has not met his burdens under *Strickland* and *Cross*, and we must reverse and remand. On remand, the court should conduct an evidentiary hearing to give McCall an opportunity to come forward with the evidence required by *Cross*, 811 F.2d at 1014–17. As we stated there, the focus should be on "what information would have been obtained from [Tetti and any other uncalled witnesses] and whether such information, assuming its admissibility in court, would have produced a different result." *Id.* at 1016. *Strickland*'s presumption of effective trial strategy also requires that the court inquire further into the motives of Shelley in not pursuing the impeachment in the ways and with the vigor suggested by the district court and McCall's new counsel. Also, we remind the court that, should McCall be unable to produce these necessary individuals, he nonetheless must establish "with some precision," *Cross*, 811 F.2d at 1016, the content of the testimony they would have given.

### III.

As the district court aptly noted, the only direct evidence against Petitioner Billy McCall was the eyewitness identification testimony of Keenan Lett, and the circumstantial evidence was not particularly strong. Because McCall's trial counsel did not more effectively impeach this obviously key witness, the district court ruled that McCall had been afforded constitutionally inadequate assistance. It remains to be seen, however, whether and to what extent the testimony of the uncalled witness(es) would have actually impeached Lett; petitioner has not yet made the "sufficiently precise" showing required by the case law. Therefore, the district court lacked the

---

6. McCall also argues that the State waived this issue by not explicitly raising it before the district court, citing *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); and *Wilson v. O'Leary*, 895 F.2d 378 (7th Cir.1990). These cases are inapposite. In *Giordenello*, the Court did not allow the government to present a new argument, at the Supreme Court level, in defense of the arrest and search in question when it had relied on a very different argument at both the district and circuit court levels. 357 U.S. at 487–88, 78 S.Ct. at 1250–51. In *Wilson*, this court held that the State had forfeited its "best" argument by failing to raise it in its opening brief. 895 F.2d at 384. Here, the State has raised the argument that McCall failed to provide the district court with the information required by *Strickland* and *Cross* at its earliest opportunity: in its opening brief in this court. Appellants are not generally required to raise before the district court the challenge that the court had inadequate grounds to make its (as yet unmade) decision—especially where, as here, no hearing on the merits was held prior to the district court's issuance of the decision, and the challenge regards the legal predicate required for the decision. *See Hedge v. County of Tippecanoe*, 890 F.2d 4, 8 (7th Cir.1989) (waiver rule does not prohibit a party from raising on appeal the legal sufficiency and/or bases of the district court's decision even though this attack was not raised before the district court).

predicate for a proper *Strickland* analysis, and this issue must be returned to the district court.

REVERSED AND REMANDED.