Mark Allen CATES, Plaintiff,

v.

SUPERINTENDENT, INDIANA YOUTH CENTER, Defendant.

No. IP 89–881–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 17, 1990.

§ 2254, the Court's Entry and Order to Show Cause of August 23, 1989, the respondent's Return to Order to Show Cause and Memorandum in Support thereof, the petitioner's Traverse and Memorandum in Support thereof, and the Record of Proceedings and the parties' appellate briefs which were filed on appeal from the denial of the petitioner's state court Petition for Post–Conviction Relief. In his habeas Petition, the petitioner argues that (1) he was denied his Sixth Amendment right to the effective assistance of counsel as a result of his original trial counsel's joint representation of the petitioner and his co-defendant, Dennis Hanaway, (2) his guilty plea was not knowingly, intelligently and voluntarily entered because he was not advised of his right to confront and cross-examine his accusers, and (3) the post-conviction relief court failed to enter specific findings of fact and conclusions of law with respect to each of the issues which had been raised in his Petition for Post–Conviction Relief. The Court having carefully reviewed the foregoing pleadings and Record of Proceedings, and being duly advised, concludes that the petitioner's Petition for Writ of Habeas Corpus should be granted, and that the petitioner should be discharged if he is not retried within ninety (90) days of the date of the respondent's receipt of the Court's Entry. The Court further concludes that if the State elects to retry the petitioner it may not avail itself of the testimony of his co-defendant, Dennis Hanaway.

I.

FACTUAL BACKGROUND

On or about October 12, 1983, the State filed its Information in Cause Number S–17–83 charging the petitioner, Mark Cates, with one (1) count of Class C felony Forgery and one (1) count of Class D felony Theft (R. 140–141).

On October 14, 1983, the Court conducted an initial hearing in Cause Number S–17–83 (R. 134). After informing the petitioner and co-defendant Hanaway of the nature of the charges against them and the

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for defendant.

Mark Allen Cates, Plainfield, Ind., pro se.

ENTRY

STECKLER, Senior District Judge.

This matter comes before the Court on the petitioner's Petition for Writ of Habeas Corpus and Memorandum in Support thereof, which were filed pursuant to 28 U.S.C.

possible penalties if they were found guilty, the Court informed them of their constitutional right to be represented by counsel (R. 136–137). Both the petitioner and his co-defendant indicated that they understood, and that they had already retained Ronald V. Aungst, who was present in the courtroom, as their counsel (R. 135–137). The trial court then inquired of Aungst whether he was entering his appearance for both defendants (R. 137). After Aungst responded affirmatively, the Court proceeded to advise the petitioner and co-defendant Hanaway of their constitutional rights, including their right to "meet the witnesses [against them] face to face", but did not discuss with them the possibility that Aungst could encounter a conflict of interest as a result of his joint representation (R. 137–138). At the conclusion of the hearing, the Court entered preliminary pleas of not guilty on the petitioner's and his co-defendant's behalf (R. 142).

On October 24, 1983, the State filed its Information in Cause Number S–20–83 charging the petitioner with one (1) count of Class B felony Burglary and one (1) count of Class C felony Burglary (R. 13–15). On the same day, the State filed an Amended Information, apparently because the Class B felony count deviated from the statute with respect to one (1) of the elements of the offense (R. 14, 21–22).

On the following day, October 25, 1983, the State filed its Information in Cause Number S–21–83 charging the petitioner and co-defendant Hanaway with Class D felony Attempted Escape and Class B misdemeanor Criminal Mischief (R. 25–27). After the State's Information was filed, the petitioner and his co-defendant appeared for their initial hearing in Cause Numbers S–20–83 and S–21–83 (R. 23). They were then informed of the nature of the charges filed against them, the possible penalties which could result if they were convicted, and (once again) of their constitutional right to counsel (R. 23, 36–37, 152). At that time they were asked whether they had in fact retained counsel (R. 23, 36–37, 152). Judge Daugherty noted that the petitioner and his co-defendant had retained Aungst to represent them on other pending charges. Judge Daugherty inquired whether the petitioner and his co-defendant intended to contact Aungst in order to retain him to represent them on the current charges (in Cause Numbers S–20–83 and S–21–83) as well (R. 23, 36–37). The petitioner and his co-defendant indicated that it was their intention to do so (R. 36–37, 152). After the petitioner and co-defendant Hanaway were again advised of their constitutional rights, including their right to "meet the witnesses face to face", preliminary pleas of not guilty were entered on their behalf (R. 23, 154, 159–160). Because the petitioner had been charged with Attempted Escape and was believed to constitute a security risk, he was transferred to the Department of Corrections for "safe keeping" until trial (R. 35).

At some point after the petitioner and his co-defendant's initial hearings in Cause Numbers S–20–83 and S–21–83 were conducted, their mothers, Barbara O'Brien (the petitioner's mother) and Maude Hanaway (co-defendant Hanaway's mother) drove to Aungst's office in order to retain him to represent the petitioner and co-defendant Hanaway (R. 117, 219). While they were both present in Aungst's law office, O'Brien and Hanaway both met with Aungst although not at the same time (R. 118). When the petitioner's mother paid Aungst his retainer fee, Aungst did not discuss with her the potential conflicts of interest which are inherent in the representation of co-defendants (R. 118–119, 126). Similarly, Aungst did not discuss with Maude Hanaway the possibility that conflicts could occur (R. 126). Aungst would later testify that he did not foresee any conflicts at the time he was retained, and that it was *not necessarily* his usual practice to advise co-defendants that he jointly represented of possible conflicts of interest at the time he undertook to represent them (R. 126).

Shortly after Aungst was retained to represent the petitioner and his co-defendant, he met jointly with the petitioner and his co-defendant and discussed with them the details of their involvement in the crimes which had been charged in Cause Numbers

S–20–83 and S–21–83 (R. 117, 122, 201–202, 219–220).

Sometime prior to December 19, 1983, while he was representing both the petitioner and his co-defendant, Aungst entered into plea negotiations with the prosecutor's office but only on co-defendant Hanaway's behalf (R. 128–129). As a result of these negotiations, co-defendant Hanaway entered into a plea bargain agreement with the State of Indiana which required him to testify against the petitioner at trial (R. 222). Co-defendant Hanaway had not considered testifying against the petitioner prior to the State's offer, however, and the provision requiring his testimony was included in the plea bargain agreement at the State's suggestion (R. 222–223). The Record of Proceedings does not indicate whether the prosecutor's office was receptive, at that point in time, to entering into plea negotiations with the petitioner. The Record indicates only that a plea agreement was not offered to the petitioner at that time (R. 127–128).

Although Aungst would later testify that he did not recall whether he had been involved in negotiating the terms of co-defendant Hanaway's plea agreement or whether the prosecutor's office had simply submitted a completed proposed plea agreement to him, Aungst did encourage co-defendant Hanaway to accept the proposed plea agreement (R. 128, 222–223). This recommendation was made while Aungst was still "representing" the petitioner.

After co-defendant Hanaway entered into a plea agreement with the State, Aungst moved to withdraw as the petitioner's counsel. The Court granted Aungst's motion on December 15, 1983, finding that there *"may* be a potential conflict of interest in said attorney representing both defendants" (R. 38–39; Emphasis added). By letter dated December 19, 1983, Aungst informed the petitioner that it was no longer possible to represent him as a result of a conflict of interest which had developed (R. 125, 128–129, 202). Aungst's letter provided, in pertinent part, as follows:

This is to advise you that a result of a plea agreement that has been entered into by your co-defendant, Dennis Hanaway, it becomes impossible for me to continue to represent you in your pending criminal matters. This comes as a result of a conflict of interest arising from the plea agreement entered into by Dennis Hanaway.

(R. 125). After the petitioner received Aungst's letter, he telephoned his mother (O'Brien) and informed her that Aungst had withdrawn as his counsel (R. 204). Apparently, Aungst also telephoned O'Brien and informed her that he could not continue to represent her son due to a conflict of interest (R. 119). During his conversation with O'Brien, Aungst did not explain what a conflict of interest was, and O'Brien had no idea of its meaning (R. 118–120). Aungst did not later write a follow-up letter to O'Brien explaining the term (R. 119–120).

On January 6, 1984, the petitioner appeared *pro se* before Judge Daugherty for a hearing regarding counsel (R. 40–41, 162). Judge Daugherty noted that Aungst had withdrawn as the petitioner's counsel, and the petitioner indicated that he wished to retain new counsel (R. 40–41, 163). The Court admonished the petitioner that he should act quickly in doing so (R. 40–41, 164). Eleven (11) days later, on January 17, 1984, attorney James V. Tsoutsouris entered his appearance as the petitioner's counsel (R. 42, 119). The petitioner informed Tsoutsouris that he and his co-defendant had both talked to Aungst and had told him "everything" (R. 211). According to the petitioner, Tsoutsouris advised him to plead guilty in order to avoid being charged as an habitual offender (R. 211).

On February 6, 1984, shortly before the petitioner was scheduled to stand trial, the parties indicated that they had reached a plea agreement (R. 47–55, 94, 131). Eight (8) days later, on February 14, 1984, the trial court conducted the petitioner's guilty plea hearing (R. 47). After the Court ordered the filing of the State's Amended Information charging, in a third count, Class D felony Theft, the Court read the charges against the petitioner, described the possible penalties, and advised the peti-

tioner of his constitutional rights (R. 167–173). The Court then inquired as to the terms of the parties' plea agreement and whether the same had been voluntarily entered by the petitioner (R. 171–179). The petitioner indicated that his relationship with his present counsel was "satisfactory" and that he believed he had been adequately represented (R. 179). After the petitioner testified as to the factual basis supporting his guilty plea, the Court accepted the same, found the petitioner guilty, and ordered the preparation of a pre-sentence investigation report (R. 184–188). The hearing was concluded after the petitioner's counsel indicated he wanted a written plea agreement to reflect the verbal agreement entered into by the parties (R. 184).

On March 9, 1984, the petitioner's pre-sentence investigation report was filed (R. 56). Shortly thereafter, on April 2, 1984, the petitioner appeared for sentencing (R. 61–63, 190). At sentencing, the petitioner was represented by attorney C. Anthony Bertig (R. 61, 190). During the hearing, the Court read the parties' written plea agreement into the record (R. 192–193). The Court again accepted the parties' plea agreement, and sentenced the petitioner to an aggregate term of imprisonment of fourteen (14) years (R. 61–66). By comparison, co-defendant Hanaway was sentenced pursuant to the terms of his plea agreement to a total term of imprisonment of six (6) years (R. 205). A copy of the parties' written plea agreement was filed five (5) days after the petitioner was sentenced, on April 7, 1984 (R. 58–60).

On April 12, 1985, the petitioner filed his pro se Petition for Post–Conviction Relief (R. 71–79). He argued that his guilty plea should be vacated because he had not been advised in accordance with Indiana's guilty plea statute (R. 73–77). On the same day that the petitioner's Petition was filed, the Court appointed the Indiana Public Defender's Office to represent him during post-conviction relief proceedings (R. 80). Thereafter, on May 14, 1985, Deputy Public Defender Hector Flores entered his appearance on the petitioner's behalf (R. 81). More than a year and a half later, on November 21, 1986, the Court observed that time had passed and the Court had inadvertently failed to set the petitioner's Petition for a hearing (R. 83). On February 24, 1987, Deputy Public Defender Deborah A. Smith filed a Motion to Amend the petitioner's pro se Petition (R. 86–88). The Court granted the petitioner's Motion the same day (R. 89). The petitioner's Amended Petition included the argument that the petitioner's original trial counsel (Aungst) had violated the petitioner's Sixth Amendment rights when he undertook the petitioner's representation while laboring under an actual conflict of interest (R. 87).

On May 18 and August 26, 1987, the Court conducted a hearing on the petitioner's Petition (R. 93, 102). During the hearing, the petitioner's witnesses, including the petitioner and his co-defendant, testified with regard to both Aungst's representation and the petitioner's allegation that the petitioner had not been properly advised in accordance with Indiana's guilty plea statute. The petitioner, his mother, co-defendant Hanaway, and Aungst himself all testified, inter alia, that the petitioner had not been advised by Aungst of the potential problems which are inherent when a lawyer represents co-defendants (R. 118–119, 126, 202–203, 220). Significantly, the petitioner conceded during his cross-examination that he would have pleaded guilty even if he had been advised of his right to cross-examine the witnesses against him because his primary motivation in pleading guilty was to avoid being charged as an habitual offender (R. 210). After the parties' concluding remarks, Judge Daugherty made the following comments regarding the merits of the petitioner's Petition:

> Well, I would agree with you there, that the likelihood [sic] of a conflict representing co-defendants is certainly there on its face from Day One. But, I guess what I need to know is how Mr. Cates has been prejudiced by this, how this plea agreement is detrimental to him ... at least on its face ... Mr. Cates [wa]s facing something over 66 years in prison, and negotiated and entered into an agreement for

14 years of the 66+ years that he was facing. How is that detrimental to him? (R. 235, Ins. 5–15). Judge Daugherty then took the petitioner's Petition under advisement (R. 102, 235). On January 15, 1988, Deputy Public Defender Lee Ann Smith, no apparent relation to the petitioner's previous counsel, Deborah A. Smith, filed her appearance (R. 103). Four (4) days later, on January 19, 1988, the post-conviction relief court, by written entry, denied the petitioner's Amended Petition for Post–Conviction Relief (R. 104–108).

On September 28, 1988, the Indiana Court of Appeals handed down its Memorandum Decision (not for publication) affirming the post-conviction relief court's judgment. The Indiana Court of Appeals rejected the petitioner's argument that his original trial counsel (Aungst) had violated his Sixth Amendment rights, reasoning as follows:

> The problem with this argument is that the attorney [(Aungst)], himself, saw the matter as a conflict, reported it to the Court and withdrew from representing [the petitioner]. Thereafter another attorney was appointed for [the petitioner] and several weeks thereafter [the petitioner] tendered his guilty plea. There is no allegation that the performance of the second attorney was in any manner deficient. Nor is there a showing that the actions of the first attorney unduly prejudiced [the petitioner's] rights to a fair trial or decision to plead guilty. Accordingly, [the petitioner] has failed to show the harm necessary to his claim. *Strickland v. Washington* (1984), 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674].

*Cates v. State,* Cause Number 37A03–8806–P.C.–179 (Memorandum Decision) (Ind.App., filed September 29, 1988), Slip Op. at 2 [528 N.E.2d 1174 (table)]. The Indiana Supreme Court denied transfer on February 9, 1989.

On August 23, 1989, the present action was initiated when the petitioner's Petition for Writ of Habeas Corpus was filed. Exhaustion of remedies is not an issue in the present case. The parties contend, and the Court agrees given its review of the Record, that the petitioner has exhausted his available state court remedies.

In his Petition for Writ of Habeas Corpus, the petitioner challenges his state court conviction on three (3) independent grounds. This Court will proceed to address the issues raised in the petitioner's Petition in reverse order.

## II.

## DISCUSSION AND DECISION

A. *Post–Conviction Relief Court's failure to issue findings of fact and conclusions of law on each issue raised in the petitioner's Petition for Post–Conviction for Relief*

■ The petitioner argues that the Indiana Court of Appeals erred in finding that the post-conviction relief court's order denying his Petition for Post–Conviction Relief met the requirements of Rule 1 of the *Indiana Rules of Procedure for Post–Conviction Remedies* (Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus (hereinafter "Petitioner's Memorandum"), p. 3). According to the petitioner, the post-conviction relief court's order was deficient because it did not contain specific findings of fact and conclusions of law with respect to each of the issues he had raised in his Petition. He contends that he could not allege error in his post-conviction relief proceedings without adequate findings of fact and conclusions of law, and that he "wishes full review of his post-conviction issues to protect his right to due process" (Petitioner's Memorandum, p. 3). The petitioner also refers the Court to several Indiana Supreme Court decisions where the court held that a post-conviction relief court is required to enter specific findings of fact and conclusions of law in support of its judgment.

The respondent argues that this issue is beyond this Court's scope of review because it essentially involves the interpretation of state law and does not impact one (1) of the petitioner's federally secured rights (Respondent's Memorandum in Support of Return to Order to Show Cause (hereinafter "Respondent's Memoran-

dum"), pp. 8–9). This Court agrees and finds that the petitioner is not entitled to the relief he seeks with respect to this issue. A careful examination of the pleadings and papers filed in this cause compel the conclusion that the time for challenging the post-conviction relief court's findings of fact and conclusions of law has passed. This Court, in reviewing a federal habeas corpus petition, does not sit to correct errors of state law. As the United States Supreme Court explained in *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982), "[f]ederal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension". Because the issue of the adequacy of a state court's findings of fact and conclusions of law is not of constitutional magnitude, it is beyond this Court's scope of review and will not be addressed on the merits.

B. *Advisement of rights to confront and cross-examine*

■ The petitioner also argues that because the trial court failed to "adequately" advise him of his right to confrontation and his right to cross-examine the witnesses against him, his guilty plea was not knowingly, voluntarily and intelligently entered (Petitioner's Memorandum, pp. 2–3). The petitioner acknowledges that the trial court advised him that he had the right "to meet witnesses face to face", but he contends that such an advisement was insufficient to convey the substance of the aforementioned rights. In the Memorandum in Support of his habeas Petition, the petitioner argues as follows:

> The [Indiana] Court of Appeals interpret[ed] the [trial court's] "face to face" language as being adequate to advise a defendant of his rights. Because a fundamental right is involved, this federal

court should rule on this matter in order to resolve this issue.

(Petitioner's Memorandum, p. 3). In the Memorandum in Support of his Traverse, the petitioner adds little to his argument other than the now self-serving statement that he would not have plead guilty had he been properly advised of his rights (Memorandum in Support of Petitioner's Traverse, pp. 8–11). Not unexpectedly, in light of the specific language chosen by the trial court in this case, the petitioner chooses to emphasize the fact that a defendant's right to cross-examine the witnesses against him is a fundamental constitutional right[1] which comprises the most significant aspect of the right to confrontation.

The respondent argues that while a defendant's guilty plea must be knowingly and voluntarily entered, the petitioner was advised of his right to confrontation and his other *Boykin* rights, which is all the Constitution requires (Respondent's Memorandum, pp. 6–7). The respondent argues that he was adequately advised although not in the precise language of the Sixth Amendment (Respondent's Memorandum, pp. 6–7).

■ This Court finds the petitioner's challenge to the trial court's advisement to be without merit. As Judge Posner stated in *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir.1984), "a plea of guilty does not have to be perfectly informed in order to be voluntary". *Accord, United States ex rel. Miller v. McGinnis*, 774 F.2d 819, 823 (7th Cir.1985) (Vacation of state court guilty plea is not warranted where defect in plea proceeding is "only a formal or technical violation"). The Constitution simply does not require that a state court defendant who wishes to plead guilty must be advised of each and every facet of what a jury trial ordinarily entails. Rather, the Constitution requires only that the defendant be advised of his so-called *Boykin* rights (the right to trial by jury, the right to confront one's

---

**1.** In arguing that his rights to confrontation and cross-examination are of constitutional significance, the petitioner references the United States Constitution and the Constitution of the State of Indiana (Memorandum in Support of Petitioner's Traverse, p. 6). To the extent that

the petitioner is seeking to challenge his conviction based upon the Indiana Constitution, however, he is asserting a claim which is not cognizable in a federal habeas action. *Smith v. Phillips, supra*, 455 U.S. at 221, 102 S.Ct. at 948.

accusers, the privilege to be free from self-incrimination). As the Indiana Supreme Court noted in *White v. State*, 497 N.E.2d 893, 897 (Ind.1986), "[w]hile some members of the U.S. Supreme have suggested that the *Boykin* list is not exhaustive, they have not prevailed" (Collecting cases).

In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court held that a guilty plea may not be accepted unless the trial court determines that the plea was intelligently and voluntarily made. The *Boykin* Court held that this requirement is met when the defendant is made aware, at a minimum, that by pleading guilty he waives three (3) constitutional rights, the right to trial by jury, the right to confront his accusers, and the privilege against compulsory self-incrimination. *Id., supra*, 395 U.S. at 243, 89 S.Ct. at 1712.

■ This Court finds itself in agreement with the Indiana courts' conclusion that a guilty plea court's failure to incorporate into one of its advisements the specific pertinent language of a particular constitutional provision does not lead to the conclusion that the defendant was not properly advised as long as the meaning of the provision was sufficiently conveyed to the defendant by the advisement which is ultimately given. *Guajardo v. State*, 544 N.E.2d 174, 177 (Ind.App.1989); *Joseph v. State*, 483 N.E.2d 32, 35 (Ind.1985); *See, Greer v. Duckworth*, 555 F.Supp. 725, 727 (N.D.Ind.1983); *and Neeley v. Duckworth*, 473 F.Supp. 288 (N.D.Ind.1979). As the Indiana Court of Appeals reasoned in *Klenk v. State*, 546 N.E.2d 110, 111–112 (Ind.App.1989), a reviewing court will look to the facts and circumstances surrounding a defendant's plea in order to determine whether the meaning of a particular advisement was conveyed to the petitioner.

■ While the right to confrontation "encompasses both the cross examination of witnesses and their physical confrontation by the accused", *Klenk v. State, supra*, 546 N.E.2d at 111, the trial court's statement to the petitioner at the time of his guilty plea hearing that by pleading guilty he was waiving his right to "meet the witnesses face to face" (R. 138) was sufficient to convey the meaning of both aspects of the right to confrontation. In *Guajardo v. State, supra*, 544 N.E.2d at 177, the Indiana Court of Appeals was presented with a challenge to the adequacy of a similar advisement. The trial court in *Guajardo* advised the defendant that by pleading guilty he was waiving "the right to face witnesses against [him]". *Id., supra*, 544 N.E.2d at 177. The *Guajardo* Court held that this advisement was sufficient to convey to the defendant of both aspects of his right to confrontation:

> While cross-examination is a primary part of the right to confront witnesses, all that is constitutionally required by *Boykin* is that the accused be adequately advised of his confrontation right.

*Id.* This Court agrees with the *Guajardo* Court's reasoning, and finds the advisement which was given in the present case was sufficient. *Neeley v. Duckworth, supra*, 473 F.Supp. at 292 (Court must determine whether the "substance of waiving the right to confront one's accusers, rather than the specific words, was conveyed [to the defendant]").

C. *Joint Representation of Co-defendants and Conflict of Interest*

■ Finally, the petitioner argues that his Sixth Amendment right to the effective assistance of counsel was violated when his counsel negotiated a plea agreement on his co-defendant's behalf, a term of which was that he would testify against the petitioner, at the same time he was representing the petitioner (Memorandum of Law in Support of Petition for Writ of Habeas Corpus (hereinafter "Petitioner's Memorandum", pp. 1–2)). This argument hinges upon Aungst's negotiation, on the petitioner's co-defendant's behalf, of a plea agreement which required or contemplated that his co-defendant would testify against him at trial. The petitioner notes that (1) Aungst never informed him, or his co-defendant for that matter, of the myriad problems and difficulties which are inherent in the representation of co-defendants, and (2) Aungst entered into plea negotiations on his co-defendant's behalf after consulting with the

petitioner and his co-defendant together, but before he filed his Motion to Withdraw as the petitioner's counsel (Petitioner's Memorandum, p. 2). The petitioner contends that the Indiana Court of Appeals' decision affirming his conviction was based upon the faulty premise that multiple representation/conflict of interest cases are treated the same as the "typical" ineffective assistance of counsel case (i.e., that the petitioner is required to demonstrate prejudice in order to prevail). The crux of the petitioner's argument is that the Indiana Court of Appeals' conclusion that he was not entitled to relief because he had failed to demonstrate resulting prejudice ignores controlling United States Supreme Court precedent which holds that when an actual conflict of interest is shown prejudice is presumed (Petitioner's Memorandum, pp. 1–2 (*citing, Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).)) [2]

The respondent argues, without citing a single case in support of his position, that the petitioner was not denied the effective assistance of counsel because Aungst withdrew as the petitioner's counsel immediately after he entered into a plea agreement on co-defendant Hanaway's behalf (Respondent's Memorandum, pp. 4–5). According to the respondent, "[t]his removed the conflict to the extent that any conflict existed" (Respondent's Memorandum, p. 5). The respondent suggests that because "there was no multiple representation at the crucial times", which he defines as "the plea bargaining and the actual acceptance of the agreement and the plea and sentencing", the petitioner's Sixth Amendment right to conflict-free counsel was not violated by Aungst's negotiation of a plea agreement

on his co-defendant's behalf (Respondent's Memorandum, p. 5).

The Sixth Amendment to the United States Constitution, which was made applicable to the states through the Fourteenth Amendment, *Gideon v. Wainwright,* 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963), provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense". Since the ratification of the Bill of Rights, the federal courts have attempted to define the contours of this right and their opinions have made clear the fact that the right to effective assistance includes the right to be represented by conflict-free counsel. *Cuyler v. Sullivan,* 446 U.S. at 350, 100 S.Ct. at 1719; *United States v. Bradshaw,* 719 F.2d 907, 911 (7th Cir.1983) (*citing, United States v. Gaines,* 529 F.2d 1038, 1043 (7th Cir.1976).

When one attorney represents co-defendants, he of course runs the risk that he may violate one or more of his clients' right to the effective assistance of counsel. *Id.; Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) ("Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing."); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The standard by which an allegation that a defendant's Sixth Amendment right to conflict-free representation was violated by his counsel's actions is judged was set out in the United States Supreme Court's decision in *Cuyler v. Sullivan, supra,* 446 U.S. at 350, 100 S.Ct. at 1719. Writing for the Court, Justice Powell stated that when a defendant

---

**2.** The petitioner also argues that the Indiana Court of Appeals' conclusion on this issue is contrary to the Court of Appeals decision in *Tate v. State,* 515 N.E.2d 1145 (Ind.App.1987), *trans. den.* (Petitioner's Memorandum, p. 1). In *Tate,* the Indiana Court of Appeals reversed co-defendants' convictions based upon an actual conflict of interest. The *Tate* Court cited *Cuyler* for the proposition that prejudice is presumed in such a situation. Significantly, the fact that two (2) state appellate court decisions reach conflicting results is a matter which, in and of itself, is not (and should not be) viewed as

especially significant by a federal habeas corpus court. While a state supreme court will grant discretionary review in a situation where intermediate level appellate courts sitting in the same state have reached differing results despite being presented with the same issue, *see,* Rule 11(B)(2)(c) of the *Indiana Rules of Appellate Procedure* (a petition to transfer may be based upon a conflict between two (2) or more Court of Appeals' opinions), a federal habeas court sits to correct errors of constitutional magnitude and not to harmonize state law or explain apparent inconsistencies.

who does not object to his counsel's multiple representation at trial seeks to demonstrate that he received ineffective assistance of counsel as a result of his trial counsel's active representation of conflicting interests, he must demonstrate "that an actual conflict of interest adversely affected his lawyer's performance". *Id., supra*, 446 U.S. at 349, 100 S.Ct. at 1718. *See, United States ex rel. Billy McCall v. O'Grady*, 908 F.2d 170 (7th Cir.1990).

A careful reading of *Cuyler* and its progeny confirm the fact that the Supreme Court did not intend the "adverse affect" portion of the *Cuyler* test to require the demonstration of prejudice. Justice Powell specifically stated in *Cuyler* that a defendant who meets this test "need not demonstrate prejudice in order to obtain relief". *Id., supra*, 446 U.S. at 350, 100 S.Ct. at 1719 (*citing, Holloway v. Arkansas, supra*, 435 U.S. at 487–491, 98 S.Ct. at 1180–1182). Four (4) years after Cuyler was decided, the Supreme Court reaffirmed its holding with respect to prejudice in the specific context of conflict of interest cases. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

In the present case, the Court is compelled to agree that the petitioner's Sixth Amendment right to conflict-free representation was violated as a result of his trial counsel's actions, and that he is entitled to be released unless he is retried within ninety (90) days from the respondent's receipt of this Entry. First, what occurred in this case clearly constituted an actual conflict of interest. *United States ex rel. Zembowski v. DeRobertis*, 771 F.2d 1057, 1060–1064 (7th Cir.1985). In *Zembowski* the Seventh Circuit was presented with a factual scenario with striking similarities to the case at bar. The petitioner, Daniel M. Zembowski, his cousin, and another individual were charged in Illinois state court with robbery. Prior to trial, attorney Julius L. Sherwin, who represented all three (3) defendants, advised one of the petitioner's co-defendants (Thomas) to accept the State's offer of immunity in return for her testimony against the petitioner and his cousin Keil. *Id.* Keil fled the court's jurisdiction prior to trial and Thomas chose not to accept the State's offer. While Sherwin objected at trial to the State's motion for joinder, he did not move to withdraw or take other steps to safeguard the petitioner's right to conflict-free counsel. The petitioner was convicted and eventually filed his petition for writ of habeas corpus. The district court granted the petitioner's petition on two (2) separate grounds. *Id., supra*, 771 F.2d at 1062. The district court found that (1) given the circumstances the trial court had a duty to investigate the petitioner's allegation that a conflict of interest existed, and (2) regardless of the trial court's duty to investigate, an actual conflict of interest existed which adversely affected Sherwin's representation of the petitioner. *Id.* On appeal, the Seventh Circuit affirmed the district court's holding on both grounds. With regard to the district court's actual conflict of interest analysis, which is pertinent in the present case, the Court reasoned as follows:

Aside from any duty on the part of the trial court, petitioner has established that an actual conflict of interest existed that adversely affected Sherwin's representation, so that relief under *Cuyler, supra,* is available. Actual prejudice need not be demonstrated, because unconstitutional multiple representation is never harmless error. 446 U.S. at 349–350, 100 S.Ct. at 1718–1719. Zembowski has furnished ample evidence that Sherwin actively represented conflicting interests. Sherwin's advising Thomas to accept the state's offer of immunity, in return for her testimony against Zembowski and Kiel, itself provides sufficient proof of a conflict that adversely affected counsel's performance.

\*　　\*　　\*　　\*　　\*　　\*

Zembowski would have no problem establishing prejudice, were he required to do so. Sherwin's conduct is a shocking breach of his duty of loyalty. He actively worked against Zembowski's interest for the benefit of his other client, Thomas.

\*　　\*　　\*　　\*　　\*　　\*

[D]egree of harm is irrelevant for purposes of the Sixth Amendment. As long as an actual conflict of interest has adversely affected the lawyer's representation of his client, then it doesn't matter whether one client was harmed more than another—especially since prejudice is assumed and need not be established independently.

*United States ex rel. Zembowski v. DeRobertis, supra,* 771 F.2d at 1063–1064 (Emphasis added).

The Eleventh Circuit's analysis in *Ruffin v. Kemp,* 767 F.2d 748, 752 (11th Cir.1985), parallels the Seventh Circuit's analysis in *Zembowski* and provides further support for the Court's conclusion that the petitioner's counsel's negotiation of a plea agreement for the petitioner's co-defendant at the same time that he was representing the petitioner constituted an actual conflict of interest.

In *Ruffin,* charges arising out of an armed robbery were filed against the petitioner and his two (2) co-defendants. *Id., supra,* 767 F.2d at 749. The trial court appointed attorney Walton Hardin to represent all three (3) individuals. While one (1) of the petitioner's co-defendants retained separate counsel prior to trial, Hardin continued to represent the petitioner and co-defendant Nathan Brown. Shortly before the petitioner's trial was to begin, Hardin was informed that the case was going to be called the following week. Aware of his clients' impending trial date, Hardin went to the district attorney's office and worked out a "tentative" plea bargain for co-defendant Brown which would have required that he testify against the petitioner. *Id.,* 767 F.2d at 749–750. For some reason, however, the agreement collapsed and the petitioner was tried and convicted. *Id., supra,* 767 F.2d at 750. The petitioner subsequently filed a petition for writ of habeas corpus. The same was denied by the district court which reasoned that a conflict "never *actually* occurred". *Id., supra,* 767 F.2d at 750 (District court's emphasis). In reversing the district court's decision, the Eleventh Circuit reasoned as follows:

Both the Supreme Court and our predecessor court [ (the former Fifth Circuit) ] have dealt with the problem of an attorney's conflict of interest in the context of plea bargain negotiations. In *Holloway v. Arkansas,* 435 U.S. 475, 490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978), the Supreme Court recognized that a conflict of interest stemming from multiple representation may prevent an attorney "from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution."

In *Baty [v. Balkam,* 661 F.2d 391 (5th Cir.1981) ], the former Fifth Circuit also recognized the possibility that a conflict of interest might impair an attorney's ability to plea bargain on behalf of an individual client. 661 F.2d at 397. The attorney in *Baty* represented two codefendants in the pretrial stage of the proceedings and arranged for another attorney to represent the defendants on the eve of trial. 661 F.2d at 392–93. During the pretrial proceedings while the single attorney represented both defendants, the state offered to enter into a plea agreement. 661 F.2d at 397. The court held that "the conflict of interest before trial alone would be sufficient to grant ... [the] habeas petition" because "[h]ad he not been facing a conflict of interest, ... [the attorney] might have been able to negotiate a plea agreement on ... [one defendant's] behalf in return for becoming a prosecution witness against ... [the other defendant]." *Id.*

The instant case appears to be more egregious than the possibilities noted in *Holloway* and *Baty* since Hardin did more than simply fail to seek a plea bargain on behalf of either of the defendants. Here, Hardin "resolved" the conflict of interest by breaching his duty of loyalty to one client in favor of another.

\* \* \* \* \* \*

While Hardin was negotiating for a plea bargain for Brown, having offered Brown's testimony against Ruffin, he could not at the same time effectively negotiate a plea bargain for Ruffin and

offer Ruffin's testimony against Brown as part of the deal. Although the evidence in this case does establish that the prosecutor was open to plea negotiations since there were negotiations with respect to Brown, it might be argued that Ruffin must show that the prosecutor probably would have accepted a plea bargain on Ruffin's behalf. However, such a showing would amount to a demonstration of actual prejudice. The case law is clear that actual prejudice need not be shown.

\*　　\*　　\*　　\*　　\*　　\*

On the facts of this case, Hardin's conduct of the actual plea bargain negotiations for Brown, offering as part of the deal Brown's testimony against his own client, precluded effective plea bargaining on behalf of Ruffin and thus constituted an adverse impact on counsel's performance.

*Ruffin v. Kemp, supra,* 767 F.2d at 751–752.[3]

Given the fact that what occurred in this case constituted an actual conflict of interest, rather than a potential or hypothetical conflict, the Court must determine whether the same "adversely affected his lawyer's performance". *Cuyler v. Sullivan, supra,* 446 U.S. at 349, 100 S.Ct. at 1718. Again, this does not mean that the petitioner must demonstrate that he was prejudiced as in the typical ineffective assistance of counsel case. *See, United States v. Ellison,* 798 F.2d 1102, 1107 (7th Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987) (*citing, Strickland v. Washington,* 466 U.S. at 692, 104 S.Ct. at 2067). The Indiana Court of Appeals improperly invoked the "standard" ineffective assistance

of counsel test. Instead, the Court should have concluded, as the Court of Appeals recently concluded, that *"Cuyler* rejects the necessity of showing actual prejudice". *Tate v. State,* 515 N.E.2d 1145, 1151 (Ind. App.1988). The reason the petitioner need not demonstrate prejudice is because "a true conflict of interest forecloses the use of certain strategies and thus the effect is difficult if not impossible to measure". *Id.; See, United States v. Cirrincione,* 780 F.2d 620, 629 (7th Cir.1985). As the Supreme Court stated in *Holloway v. Arkansas,* 435 U.S. at 489–490, 98 S.Ct. at 1181, any test to determine whether there was actual prejudice would be speculative. It should also be noted that this Court will not assume that the petitioner's counsel's withdrawal in this case made the conflict simply disappear. *See, United States v. Alvarez,* 580 F.2d 1251, 1257 (5th Cir.1978) (Conflict of interest confronting petitioner's counsel prior to trial enough, in and of itself, to warrant relief). Such an assumption would require the Court to speculate as to whether the petitioner was prejudiced and to what degree.

The Court concludes that what occurred in the present case "adversely affected [the petitioner's] lawyer's performance". *Cuyler v. Sullivan, supra,* 446 U.S. at 349, 100 S.Ct. at 1718. Simply put, there is was no way that the petitioner's counsel could effectively represent the petitioner's interests at the same time that he was negotiating a plea agreement on his co-defendant's behalf. *United States ex rel. Zembowski v. DeRobertis, supra,* 771 F.2d at 1063–1064; *Ruffin v. Kemp, supra,* 767 F.2d at 751–752.

The Court concludes that the petitioner must be discharged from the convictions

---

**3.** The Eleventh Circuit's more recent decision in *Smith v. Newsome,* 876 F.2d 1461, 1463–1464 (11th Cir.1989), does not cast doubt upon the *Ruffin* Court's analysis or ultimate conclusion. While the *Newsome* Court concluded that the petitioner's Sixth Amendment right to conflict-free counsel was not violated when his counsel negotiated a plea agreement on his codefendant's behalf while representing the petitioner, the Court distinguished *Ruffin* noting that while the prosecutor in *Ruffin* was open to plea negotiations—the prosecutor in *Newsome* was not. *Id., supra,* 876 F.2d at 1463. In other words,

there was evidence introduced in *Newsome* that the prosecutor did not wish to enter into a plea agreement with the petitioner and that the petitioner's counsel's conflict of interest did not affect his chance to secure a plea bargain. Even if the present case were not distinguishable, the distinction being the fact that there is no evidence in the present case that the State was unwilling to bargain with the petitioner, this Court would hesitate to follow *Newsome* as it arguably reads a requirement that a petitioner demonstrate prejudice into the *Cuyler* test— something the Supreme Court has refused to do.

which were the subject of his 1984 guilty plea if he is not retried within ninety (90) days from the date of the respondent's receipt of this Entry. *Cf., United States ex rel. Miller v. McGinnis, supra,* 774 F.2d at 825 (Court ordered State to permit petitioner who had been misinformed about consequences of plea "to plead anew").

## CONCLUSION

For the foregoing reasons, the Court concludes that the writ prayed for must be granted unless the petitioner is retried within ninety (90) days from the date of the respondent's receipt of this entry. The State of Indiana may not avail itself of the testimony of co-defendant Hanaway should it elect to retry the petitioner within the period just specified.

IT IS SO ORDERED.