UNITED STATES of America, ex rel., Daniel M. ZEMBOWSKI, Petitioner-Appellee,

v.

Richard DeROBERTIS, Warden, Respondent-Appellant.

No. 85–1014.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1985.

Decided Aug. 27, 1985.

James A. Clark, Schiff, Hardin & Waite, Chicago, Ill., for petitioner-appellee.

James E. Fitzgerald, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and WRIGHT, Senior Circuit Judge.*

CUMMINGS, Chief Judge.

Daniel M. Zembowski, petitioner herein, filed a petition for a writ of habeas corpus from a conviction in state court for armed robbery. The petition alleged that during the joint trial of petitioner, trial counsel had a conflict of interest. The district court granted petitioner the relief requested on summary judgment. We affirm.

I

The facts are undisputed. On January 4, 1979, two men and one woman robbed a jewelry store in Deerfield, Illinois. On

* The Honorable Eugene A. Wright, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

April 16, 1979, petitioner and Frank W. Kiel, his cousin, were charged by information with the offense of armed robbery. That same day the state filed a separate information containing the same charge against Deborah Thomas. Kiel was classified as a career criminal by reference to internal administrative guidelines used by the State of Illinois, causing the case to be assigned to assistant state's attorney Robert J. Fox, who headed the career criminal division of the Lake County State's Attorney's Office.

On June 11, 1979, the state moved for joinder of the two separate cases. Julius L. Sherwin, who was representing all three defendants, opposed the motion. His written motion opposing the state's motion for joinder advanced two reasons for the objection—that certain incriminatory statements made by Thomas would be inadmissible against petitioner and Kiel and highly prejudicial to the two men, and that both of the men had defenses that conflicted with and were antagonistic to defenses of Thomas. At hearings on June 11, July 13, and July 27, Sherwin repeatedly opposed the state's motion to joinder, because of the allegedly incriminating statements made by Thomas and because of allegedly conflicting defenses. Nevertheless, Judge McQueen granted the state's motion to join without exploring the claimed conflicting defenses.

All three defendants were released on bond pending trial. Prior to trial the state made an offer to Sherwin to immunize Thomas in exchange for her testimony against her two co-defendants. Sherwin urged her to accept this offer, despite the clear breach of loyalty to his other two clients that this advice entailed. Even assistant state's attorney Fox advised Sherwin he had a conflict of interest. The state also offered to enter into a plea agreement with petitioner in which he would receive the minimum six-year sentence in exchange for a plea of guilty. A similar plea offer was made to Kiel, despite the state's policy against plea bargaining with career criminals. Sherwin incorrectly represented to the three co-defendants that the plea negotiation offers were a package deal, and that

all of them had to be accepted to be effective.

Thereafter Kiel fled the jurisdiction and forfeited his bond. Zembowski and Thomas believed that because the plea offers were a "package deal," Kiel's flight terminated the state's offer. In fact, the state remained willing to enter into the offered agreement with petitioner until the commencement of trial, but Sherwin never explained this readiness to Zembowski. Had petitioner accepted the offer, he would have been released from prison no later than 1983.

Both Zembowski and Thomas entered pleas of not guilty at their joint trial on January 16–18, 1980. Both testified in their own behalf and both claimed alibis, but only petitioner was able to corroborate his alibi defense, albeit unsuccessfully. Sherwin admitted in a sworn affidavit on August 29, 1984, that

> at trial it was my strategy and plan that the judge or jury might acquit Thomas if either the judge or jury felt that Thomas had been led astray by Zembowski, whom I considered to be the major malefactor. Unfortunately, however, that plan failed and Thomas, as well as Zembowski, was convicted.

His conduct at the trial evidences his efforts to secure acquittal for Thomas at any cost, including the conviction of his other remaining client. Two eyewitnesses testified at trial, one of whom identified both Zembowski and Thomas, the other who identified Zembowski alone. In cross-examining the individual who identified both Zembowski and Thomas, Sherwin intentionally elicited comments that strengthened the eyewitness' identification of Zembowski. On at least one occasion Sherwin publicly and sarcastically rebuked his client, Zembowski.

When arguing to the trial judge in chambers on motions for directed verdicts he had submitted on behalf of both of his clients, Sherwin confined his remarks to Thomas' predicament. In doing so he blatantly suggested to the trial judge that "if

the Judge dismisses her out and leaves Zembowski, the Jury will come to the conclusion there must be something about it that makes Zembowski guilty or the Judge would have let him out. *I'm offering you a suggestion where you can get the major malefactor."* (Tr. 480.) (Emphasis supplied.) The trial judge denied the motions for directed verdict, after which the jury returned verdicts of guilty against both defendants.

At sentencing, Sherwin stressed Thomas' having a three-year-old child, family problems in the form of her father's alcoholism, and her lack of a prior criminal record. He also falsely informed the judge that the state had been willing to dismiss the charges against Thomas if Kiel and Zembowski pled guilty, implying that the latter's refusal to do so forced her to stand trial. Sherwin also requested the state to reduce the charge against her to unarmed robbery, so that probation would be available. In contrast, Sherwin offered no argument on Zembowski's behalf, although Zembowski had a wife and four children to support, a history of depression, and no criminal convictions prior to the armed robbery.

The cumulative effect of Sherwin's sabotage of Zembowski's trial is aptly illustrated by the trial judge's remarks at sentencing. The judge noted that imprisonment would cause hardship on Thomas' child and family, but that the law compelled him to sentence her to a minimum of six years' imprisonment. He also told her that he didn't believe she was the instigator of the armed robbery and that he thought she was "led" by Zembowski. Regarding Zembowski, the trial judge could find no grounds for possible mitigation, not even conceding that his imprisonment would impose hardship on his family. In fact, the judge advanced the view that petitioner had not "properly supported" his family, a view that the evidence did not support. The judge also stated that he thought Zembowski's case was

further aggravated by your involvement of Deborah Ann Thomas. I cannot be-

lieve that she instigated this offense, a 24-year-old woman with a 3- or 4-year-old child, and I believe that you induced her to be an accomplice in your crime of violence and you are largely responsible for her situation today, and I think I must take this into consideration. (Tr. 680.)

This hostility toward Zembowski could only have come from trial counsel's repeated innuendos that Thomas was an unwitting dupe of Zembowski and that the latter was responsible for her being before the court at all. By stressing her age and her child—and ignoring Zembowski's much weightier support obligations—Sherwin cast Thomas as the innocent preyed upon by the big bad wolf Zembowski, who was given a fifteen-year sentence.

In April 1980, Kiel was apprehended in Arizona and returned to Illinois. Kiel had an extensive record of criminal convictions. Nevertheless, the state entered into a plea-bargaining arrangement with him in which he pled guilty to the armed robbery charge and in return was sentenced to ten years by Judge McQueen, to run concurrently with a sentence imposed for a burglary committed after the January 4, 1979, armed robbery and before he jumped bail. Kiel would have been eligible for release on March 26, 1984, but due to a loss of good-time credit was not released until July 9, 1984.

Thomas filed a petition for post-conviction relief, on the grounds of Sherwin's conflict of interest. The state acquiesced in her argument that Sherwin could not effectively represent either Thomas or Zembowski. Judge McQueen summarily granted her request at a hearing on January 12, 1981. She then entered a negotiated plea of guilty to a lesser charge and was released on January 29, 1981, without having to complete her six-year term. Zembowski similarly filed a petition for post-conviction relief on the same grounds after his direct appeal failed, but Judge McQueen summarily denied his petition without a hearing.

Zembowski filed his petition for a writ of habeas corpus in the district court on September 19, 1983. The district court filed an order permitting discovery on March 1, 1984, and Zembowski requested discovery that day. Instead of promptly obtaining discovery, the state delayed, repeatedly promising Zembowski's counsel that requested documents would be forthcoming, only to fail to honor its assurances. On May 30, 1984, Zembowski filed his first motion to compel production. Hearings were held on June 1, June 14, July 9, and July 16. Each time, the state promised to deliver the requested documents, and each time did not do so (though on June 22 the state did deliver three of the documents requested). On July 19, Zembowski filed a motion for affidavit of completeness, which motion the court granted on August 1. The state still refused to say whether it had completed its search. On September 27, 1981, Zembowski filed a motion to compel production of affidavit of completeness. Hearings were held October 1 and October 22, at which time the district court ordered the state to pay costs and fees in connection with the two motions to compel, at the old Criminal Justice Act rates (effective prior to October 12, 1984). The district court ordered the payment of $472.42 forthwith, but no payment has yet been made. On December 3, 1984, the district court granted petitioner's motion for summary judgment. Respondent warden has timely appealed from the final judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

The district court granted the writ of habeas corpus on two independent grounds. First, the district court held that Sherwin had objected to the joint representation through his opposition to the state's motion for joinder, so that the state trial court's failure to investigate independently Sherwin's claim that a conflict of interest existed constituted grounds for automatic relief under *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Alternatively, the district court held that even if

counsel had not objected at trial to the joint representation, an actual conflict of interest existed that adversely affected his representation of Zembowski and therefore warranted relief. See *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). We address first the possibility of relief under *Holloway*.

■ The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." Joint representation of co-defendants by a single attorney "is not *per se* violative of constitutional guarantees of effective assistance of counsel." *Holloway*, 435 U.S. at 482, 98 S.Ct. at 1177. But when an attorney timely objects to joint representation because of "the probable risk of a conflict of interests," and the trial judge then fails "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel," that failure deprives the defendant of the Sixth Amendment guarantee of assistance of counsel. *Id.* at 484, 98 S.Ct. at 1178. In such a situation prejudice is assumed and the defendant need make no independent showing of prejudice. *Id.* at 489, 98 S.Ct. at 1181.

■ Respondent argues that Sherwin based his objections only on the incriminating evidence that might be introduced against Thomas that would be inadmissible against Zembowski and Kiel and that the trial court after full consideration resolved this issue against Sherwin's position. What respondent cannot contradict is that Sherwin's written motion objecting to the joinder of the two trials referred both to the disputed evidence and to asserted defenses of Zembowski and Kiel that were adverse to and conflicted with those of Thomas. The trial court never inquired about this conflict and never ordered Sherwin to withdraw from representing both of his clients. That Sherwin repeatedly assured the trial court that if the trial court granted the state's motion to consolidate the two trials he would ensure that the

co-defendants had independent counsel cannot alleviate the trial court's obligation to assure itself that Sherwin had carried out his promises. At the final hearing on July 27th, assistant state's attorney Fox informed the court that he did not believe that antagonistic defenses existed, but that if they did then Sherwin would have to withdraw from representing one of his clients. Sherwin argued to the court that he did not have to withdraw until the court had actually granted the state's motion to join. The court stated that all it knew about the case was that the co-defendants had pleaded not guilty and that until Sherwin introduced evidence to establish that conflicting defenses existed the trial court was going to take no action whatsoever.

 This position misconceives what the Constitution requires. When presented with Sherwin's claim of conflicting defenses, at a minimum the trial court should have requested that Sherwin give him some idea of what the conflict entailed, to allow him to determine whether to order Sherwin to withdraw. In view of the vigor with which Sherwin argued that his clients had conflicting defenses, the trial court had a duty to investigate that claim. *Holloway* does not require that Sherwin disclose his trial strategy or violate his duty of confidentiality to his clients, so that the substance of what he could have disclosed to the trial judge may have been quite limited. Still the judge had an obligation to determine whether the conflicting defenses encompassed more than the evidence incriminating Thomas, and if so whether the possibility of an actual conflict's developing mandated the court's ordering Sherwin to withdraw from joint representation. That Sherwin abrogated his duty of loyalty to Zembowski by not withdrawing when it must have been obvious to him that he had a conflict of interest cannot relieve the trial court, faced with an objection to joint representation, of its duty to ascertain that Zembowski was not deprived of his Sixth Amendment rights. Nor is it material that the objection to joint representation was in the form of opposition to the state's joinder motion rather than a motion to withdraw.

Sherwin clearly wanted to resolve his conflict with separate trials, so that he could continue to represent Thomas as well as Zembowski and Kiel. When the trial court refused to resolve the conflict for him in this way, he let the issue drop. But the issue had been placed before the court, and it should have made some inquiry into the matter before moving on with the trial.

 Even if Sherwin's opposition to the state's motion for joinder did not constitute a sufficient objection to trigger *Holloway*, the trial court would still have been required to investigate whether a conflict existed if "it knows or reasonably should know that a particular conflict exists." See *Cuyler*, 446 U.S. at 347, 100 S.Ct. at 1717. Special circumstances sufficient to trigger this duty exist in the case at bar. *Wilson v. Morris*, 724 F.2d 591 (7th Cir. 1984) (*en banc*), certiorari denied, ——— U.S. ———, 104 S.Ct. 2357, 80 L.Ed.2d 829, does not support a contradictory result. Special circumstances were not implicated in *Wilson* for two reasons. The first is that the joint representation occurred during a preliminary examination only, during which defense counsel has an extremely limited role. Second, the actual trials of the two co-defendants were separate. Because "separate trials significantly reduce the possibility of an actual conflict of interest," 724 F.2d at 595, the trial judge need not have foreseen at the preliminary hearing stage that an actual conflict of interest might arise in the later stages of the prosecutions. The case at bar is quite different. The joint representation was contemplated not only during the preliminary stages of the prosecution, but throughout the co-defendants' trial. Sherwin argued that the joint trial would create the conflict of interest because Thomas' interests were opposed to those of her two co-defendants. This contention should have alerted the trial judge to his duty to inquire into the challenged joint representation and ensure that Zembowski's rights were protected.

Aside from any duty on the part of the trial court, petitioner has established that

an actual conflict of interest existed that adversely affected Sherwin's representation, so that relief under *Cuyler, supra,* is available. Actual prejudice need not be demonstrated, because unconstitutional multiple representation is never harmless error. 446 U.S. at 349–350, 100 S.Ct. at 1718–1719. Zembowski has furnished ample evidence that Sherwin actively represented conflicting interests. Sherwin's advising Thomas to accept the state's offer of immunity, in return for her testimony against Zembowski and Kiel, itself provides sufficient proof of a conflict that adversely affected counsel's performance. Sherwin also misled Zembowski concerning the effect of Kiel's flight on the state's willingness to consummate a plea agreement with Zembowski. Sherwin has acknowledged in a sworn affidavit that his trial strategy was to obtain acquittal for Thomas at Zembowski's expense, a strategy that evidently entailed Sherwin's publicly chastising his other client, his intentionally buttressing an eyewitness' identification of Zembowski, and his contending that petitioner was responsible for Thomas' involvement in the crime. The trial judge in fact adopted Sherwin's assessment of how Thomas became involved, and used this theory to augment Zembowski's punishment. Clearer proof of a conflict of interest that adversely affected Sherwin's representation of Zembowski could hardly exist.

■ Zembowski would have no problem establishing prejudice, were he required to do so. Sherwin's conduct is a shocking breach of his duty of loyalty. He actively worked against Zembowski's interest for the benefit of his other client, Thomas. However permissible Sherwin's trial strategy would have been had he been representing only Thomas, his agreeing to represent both co-defendants barred him from using that approach. The judge adopted Sherwin's attitude in sentencing Zembowski to fifteen years. Even Kiel, the career criminal who fled the jurisdiction, received only a ten-year sentence and has already regained his freedom. Judge McQueen's hostility toward petitioner appears to have continued past the sentencing hearing. Al-

though he had previously summarily granted Thomas' request for post-conviction relief because of Sherwin's conflict of interest, he refused to accord Zembowski the same relief. He might have done so because, had Sherwin informed Thomas that the offer of immunity was still open after Kiel's flight, then she would not have had to go to prison at all, while Zembowski would have been sentenced to six years regardless. But degree of harm is irrelevant for purposes of the Sixth Amendment. As long as an actual conflict of interest has adversely affected the lawyer's representation of his client, then it doesn't matter whether one client was harmed more than another—especially since prejudice is assumed and need not be established independently. Judge McQueen's granting Thomas' petition for relief while denying petitioner's is inexplicable. The district court's grant of a writ of habeas corpus must be affirmed.

### III

■ Petitioner argues that the lower court's imposition of $472.42 discovery sanctions was not properly appealed to this Court. He bases this argument on Fed.R. App.P. 3(c), which provides in relevant part that the "notice of appeal * * * shall designate the judgment, order or part thereof appealed from." Nonetheless "notices of appeal are entitled to a liberal construction where the intent of the appellant is apparent and the adverse party is not prejudiced." *Scherer v. Kelley,* 584 F.2d 170, 174 (7th Cir.1978) (citing *Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962) ). Dismissals of appeals on technicalities are to be avoided. The general rule is that "[a]n appeal from the final judgment draws in question all prior non-final orders and all rulings which produced the judgment." J. Moore, B. Ward, J. Lucas, 9 Moore's Federal Practice (2d ed. 1985) ¶ 203.18, at 3–80. The order at issue was a non-final order, since it was entered against respondent, see *Mulay Plastics, Inc. v. Grand Trunk Western Railroad,* 742 F.2d 369, 370 (7th Cir.1984), rather

than against non-parties such as respondent's counsel, see *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984) (sanction against non-party attorney immediately appealable). Therefore it was not appealable until the court below's entry of final judgment.

A review of these principles convinces us that the issue of the district court's imposition of sanctions was properly preserved. Respondent did violate our Circuit Rule 12(a) by not including in his appendix a copy of the court's imposition of sanctions, along with a transcript of the hearing regarding that order. Nevertheless, he did appeal generally from the district court's final judgment. The better practice would have been to mention specifically the order imposing sanctions in the notice of appeal, and certainly respondent should have included a copy of it in his required appendix. Petitioner, however, has not been prejudiced by respondent's failure. Both parties have fully briefed the issue. In addition, respondent's failure to pay the $472.42 attorney's fees "forthwith" as ordered by the district court, in apparent violation of our decision in *Mulay Plastics, Inc. v. Grand Trunk Western Railroad*, 742 F.2d at 370, must have alerted petitioner to the probability that respondent would oppose the sanctions. Respondent's omission appears to have been inadvertent, not intentional, cf. *Bach v. Coughlin*, 508 F.2d 303 (7th Cir.1974) (*per curiam*) (appellants' intentionally limiting notice of appeal to part of judgment precludes their later bringing up other issues deliberately omitted from notice of appeal), so that our refusing to consider respondent's claim would at least violate the spirit of the federal rules.

The decision to impose sanctions is a discretionary one that we cannot reverse unless the district court has abused its discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (*per curiam*). Counsel for respondent attempts to excuse his lack of diligence by claiming that the files requested were at the Lake County State's Attor-

ney's office, not the Illinois Attorney General's offices. The documents requested, however, although not in the Attorney General's own files, were within his control. Not only was counsel dilatory in responding to petitioner's requests, but counsel repeatedly misled both petitioner and the district court regarding when certain requested documents would be made available. Counsel's stalling required petitioner's court-appointed counsel to petition the district court repeatedly for relief. More significant than the burden on petitioner's counsel was the injustice to petitioner in prolonging the time he was unfairly imprisoned. The district court did not abuse its discretion in imposing the sanctions. Its award of modest attorney's fees and costs is affirmed. The grant of the writ of habeas corpus is affirmed. Unless the state affords petitioner a new trial within 120 days herefrom, it will be barred from bringing petitioner to trial on the subject armed robbery charges.