Mark Allen CATES, Petitioner–Appellee,

v.

SUPERINTENDENT, INDIANA YOUTH
CENTER, Respondent–Appellant.

No. 90–3009.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 23, 1992.
Decided Dec. 11, 1992.

John E. Horn (argued), Tinley Park, IL, for petitioner-appellee.

David A. Arthur, Deputy Atty. Gen. (argued), Office of the Atty. Gen., Federal Litigation, Indianapolis, IN for respondent-appellant.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

BAUER, Chief Judge.

In this habeas corpus appeal, we determine whether counsel's joint representation of two defendants during the initial phases of their criminal proceedings violated Petitioner Mark Cates' Sixth Amendment right to effective assistance of counsel. We find no constitutional violation, and reverse the district court's grant of Cates' petition.

## I. Factual Background

### A. State Court Proceedings

In October 1984, Mark Cates and Dennis Hanaway were charged with one count each of felony forgery and felony theft, two counts of burglary, attempted escape, and criminal mischief. In two hearings held October 14 and October 25, the Jasper Circuit Court in Jasper County, Indiana explained the charges to Cates and Hanaway and informed them of their constitutional rights.[1] During the October 14 hearing, Cates and Hanaway informed the court that they had retained Ronald V. Aungst to represent them. Neither the parties nor the court mentioned the possibility of a conflict of interest during the hearing. At the second hearing, new charges were levied against the defendants, and the court asked the defendants whether they had retained counsel to represent them on those charges. State Court Record ("S.C.R.") at 152. They had not retained counsel, and the trial court suggested that they retain Aungst to represent them on these charges as well. The defendants accepted this suggestion.

---

1. The most pertinent of the court's warnings follows:

   Gentlemen, it is the duty of this Court to inform you that under the Constitution and the laws of the State of Indiana and of the United States, it's provided that you are entitled to the services of an attorney to represent and consult with you at each and every stage of the proceedings, and if you do not have the money or means with which to employ an attorney, it is the duty of the Court to appoint one for you at public expense. Do you understand you have the right to an attorney?

   Transcript Hearing of October 25, 1983, State Court Record ("S.C.R.") at 151. Both defendants answered affirmatively.

Again, no mention was made of a possible conflict of interest.

The defendants' mothers visited Aungst in early October 1984 to hire him to represent their sons. Both paid retainer fees. Although he discussed their sons' cases with the women, Aungst did not mention the possibility of any potential conflicts of interest which might affect his representation of both men. Transcript of August 26, 1987 Hearing on Defendant's Petition for Post–Conviction Relief ("Post–Conviction Hearing") (testimony of Barbara O'Brien, Cates' Mother) S.C.R. at 118. Aungst met with Cates and Hanaway together and discussed the details of the crimes with which they were charged. He did not discuss the potential for conflicts of interest with Hanaway and Cates. At the hearing for post-conviction relief, Aungst testified that it was "not necessarily" his usual practice to inform co-defendants of the potential conflicts of interest inherent in joint representation. *Id.* at 126. This neglect was not in keeping with his duty as an attorney.

Sometime in December 1983 (the date is not clear), the prosecutor approached Aungst to offer Hanaway a plea bargain. The bargain was conditioned on Hanaway assisting the government in its case against Cates, and testifying against him if necessary. *Id.* at 127. The prosecutor did not offer a plea agreement for Cates. The state court granted Aungst's Motion to Withdraw on December 15, 1983. On December 19, 1983, Aungst notified Cates that he was withdrawing from his case because of a conflict of interest. *Id.* at 129. Aungst's letter stated that

> as a result of a plea agreement that has been entered into by your co-defendant, Dennis Hanaway, it becomes impossible for me to continue to represent you in your pending criminal matters. This comes as a result of a conflict of interest arising from the plea agreement entered into by Dennis Hanaway.

Aungst letter of December 19, 1983, Defendant's Exhibit A to Post–Conviction Hearing, S.C.R. at 125. Cates retained another attorney, James Tsoutsouris, who appeared on his behalf on January 17, 1984. At the plea hearing on February 14, 1984 the government added a felony theft count to its information based upon the statement Hanaway provided pursuant to his plea agreement. *See* Cates' Petition for Writ of Habeas Corpus, District Court Record Document 3. Cates pleaded guilty to all the charges. After it fully explained the constitutional rights Cates waived if he pleaded guilty, the sentencing court asked Cates if he understood those rights, and if he was satisfied with the representation of counsel. Plea Hearing Transcript S.C.R. at 171–72. Cates responded positively to both questions. S.C.R. at 179. The plea agreement provided that Cates would plead guilty and be available to testify against other individuals about the acts charged in the information. In exchange, the State would abandon a habitual criminal charge. *Id.* at 176. This charge would have required the court to impose a thirty-year sentence enhancement. Appellant's Brief at 20. The court accepted Cates' plea, and he was sentenced on April 2, 1984. Transcript of Pronouncement of Sentence, S.C.R. at 190.

On April 11, 1985, Cates filed a pro se petition for post-conviction relief pursuant to the Indiana Rules of Procedure for Post–Conviction Remedies. Among other challenges, he complained that he did not receive effective assistance of counsel because of Aungst's misconduct. The trial court held two hearings on Cates' motions on May 18, 1987 and August 26, 1987. The delay before the hearings was caused by the court's inadvertent failure to set the matter for hearing. S.C.R. at 83. The Indiana trial court denied Cates' motion because (1) Aungst withdrew from Cates' case one month before Cates pleaded guilty, (2) Cates was represented by Tsoutsouris when he pleaded guilty, and (3) there was no evidence that Aungst used privileged information he received from Cates to negotiate Hanaway's plea agreement. Jasper County Court Order of January 19, 1988, S.C.R. at 105–10. At the hearing, the court acknowledged that attorneys face a potential conflict when they represent co-defendants, but questioned the impact of the conflict in Cates' case. "[W]hat I need

to know is how Mr. Cates has been prejudiced by this, how this plea agreement is detrimental to him ... at least on its face.... Mr. Cates [was] facing something over 66 years in prison, and negotiated and entered into an agreement for 14 years.... How is that detrimental to him?" Post–Conviction Hearing, S.C.R. at 235.

The Court of Appeals of Indiana denied Cates' appeal because it found that there was no "showing that the actions of the first attorney unduly prejudiced the petitioner's rights to a fair trial or decision to plead guilty." *Cates v. State*, No. 37A03–8806–P.C.–179 (Memorandum Decision) slip op. at 2 (3d Dist. Sept. 29, 1988), Appellant's Appendix at 27. The Supreme Court of Indiana declined to review the matter.

### B. District Court Proceedings

Having exhausted his state court remedies, Cates filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court granted the writ on the ground that Aungst's joint representation violated Cates' Sixth Amendment right to effective assistance of counsel. *Cates v. Superintendent*, 752 F.Supp. 854 (S.D.Ind. 1990). The court found that the Indiana Court of Appeals improperly invoked the "standard ineffective assistance of counsel test." *Cates*, 752 F.Supp. at 865. Instead, the district court believed that *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) rejected the necessity of showing actual prejudice. *Cates*, 752 F.Supp. at 865. "Simply put," the court held, "there is no way that the petitioner's counsel could effectively represent the petitioner's interests at the same time he was negotiating a plea on his co-defendant's behalf." *Id.*

On August 17, 1990, the court granted the writ, and ordered that Cates be discharged from his convictions if he was not retried within 90 days. The court also ordered that the State could not use Hanaway's testimony in any new trial. The State moved for a stay of the order pending appeal, but the district court denied the motion. The State did not appeal the denial of the stay. Cates was not retried, and he was released on parole before the ninety day period expired.

### II. Analysis

#### A. Jurisdiction

█ Cates alleges that this matter is moot because the state did not appeal the district court's denial of the stay, he was not retried, and he was released on parole before the ninety day period expired. These facts do not moot the state's appeal of the district court's grant of the writ. *York v. Tate*, 858 F.2d 322, 324 (6th Cir. 1988), *cert. denied*, 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428 (1989). As the Sixth Circuit explained:

> Just as the former prisoner has a continued interest in clearing his name, so too the state maintains an interest in assuring that a state prisoner is not improperly released prior to the completion of his allotted sentence.

*Id.* at 325. Further, the record indicates that Cates was paroled, not discharged, which means that he is still in custody for habeas corpus purposes, *Jones v. Cunningham*, 371 U.S. 236, 242–43, 83 S.Ct. 373, 376–77, 9 L.Ed.2d 285 (1962), and, further, we maintain jurisdiction because of the state's interest in possibly restoring a defendant to custody. *See Evitts v. Lucey*, 469 U.S. 387, 391 n. 4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821 (1985) (state's appeal from grant of writ not mooted by prisoner's discharge while appeal pending); *Jones v. Helms*, 452 U.S. 412, 416 n. 6, 417, 101 S.Ct. 2434, 2438–39 n. 6, 2439, 69 L.Ed.2d 118 (1981) (same).

#### B. Ineffective Assistance

█ The Sixth Amendment guarantees that criminal defendants receive effective assistance of counsel at all stages of the proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Johnson v. Duckworth*, 793 F.2d 898, 900–902 (7th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986). In *Strickland*, the Court held that in order to demonstrate that his Sixth Amendment rights were vio-

lated, a defendant must show that counsel's performance fell outside the "wide range of professionally competent assistance," and a reasonable probability exists that counsel's errors changed the outcome of the proceeding. *Strickland,* 466 U.S. at 690, 694, 104 S.Ct. at 2066, 2068. Assistance free from conflicts of interest is implicit in the concept of effective assistance of counsel. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Joint representation does not create a per se violation of the Sixth Amendment, but counsel have an ethical obligation "to avoid conflicting representations and to advise the court promptly when a conflict of interest arises...." *Id.* at 346–47, 100 S.Ct. at 1717–18. ABA Code of Professional Responsibility, DR 5–105, EC 5–15 (1976). Because counsel is in the best position to determine when a conflict exists or will develop, trial courts necessarily rely upon their good faith and good judgment. *Cuyler,* 446 U.S. at 346–47, 100 S.Ct. at 1717–18.

Because "a possible conflict inheres in almost every instance of multiple representation," a defendant who objects to multiple representation must have the opportunity to show the trial court that potential conflicts impermissibly imperil his right to a fair trial. *Id.* at 348, 100 S.Ct. at 1718. But, unless the defendant objects and the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility of a conflict has resulted in ineffective assistance. *Id.* The Court explained that such a broad presumption would preclude multiple representation even in cases where a common defense would be beneficial. *Id.* Therefore, when the issue is raised for the first time on appeal, the Court requires defendants to satisfy a two-pronged standard. She must show that her counsel labored under an actual conflict of interest, and that the conflict adversely affected her attorney's performance. *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718.

With these principles in mind, we turn to the facts presented in this case. The district court relied upon *United States ex rel., Zembowski v. DeRobertis,* 771 F.2d

1057, 1060–64 (7th Cir.1985) and *Ruffin v. Kemp,* 767 F.2d 748, 752 (11th Cir.1985) to conclude that Cates' Sixth Amendment rights were violated. In *Zembowski,* three people charged in the robbery of a jewelry store were tried together. They were represented by the same counsel, who objected strenuously to the joint trial. The attorney explained to the trial court that defendant Thomas had made statements incriminating the other two (Zembowski and Kiel), and that the defendants' defenses were antagonistic. *Id.* at 1060. The trial court refused to allow him to withdraw or to sever the trials. The government then offered to immunize Thomas in return for her testimony against Kiel and Zembowski. Although the attorney urged Thomas to accept (breaching his duty of loyalty to his other two clients), she refused the offer. The state also offered plea agreements to Kiel and Zembowski. The attorney falsely represented that the plea offers were a package deal.

Kiel fled the jurisdiction; Thomas and Zembowski believed the flight forfeited the government's offer. In fact, the government remained willing to enter into the offered agreement, but the attorney did not explain this to his clients. They entered not guilty pleas and were tried jointly. The attorney admitted that it was his strategy that " 'the judge or jury might acquit Thomas if either the judge or jury felt that Thomas had been led astray by Zembowski, whom I considered to be the major malefactor. Unfortunately, however, that plan failed and Thomas, as well as Zembowski, was convicted.' " *Zembowski,* 771 F.2d at 1060 (quoting attorney's testimony). We noted that "his conduct at trial evidences his efforts to secure acquittal for Thomas at any cost, including the conviction of his remaining client." *Id.* We also stated that "[the attorney's] advising Thomas to accept the state's offer of immunity, in return for her testimony against Zembowski and Kiel, itself provides sufficient proof of a conflict that adversely affected counsel's performance." *Id.* at 1064.

The Eleventh Circuit examined a similar situation in *Ruffin.* A single attorney represented two of three defendants in a mur-

der case. When the attorney learned Ruffin's trial was set for the following week, he "dropped everything" to work out a plea bargain for Brown, Ruffin's co-defendant. In negotiations, the attorney offered Brown's testimony against Ruffin at trial. The agreement never materialized, and the attorney continued to represent both defendants. At trial Ruffin was convicted and sentenced to death. *Ruffin*, 767 F.2d at 750.

The Eleventh Circuit found that in offering Brown's testimony, the attorney actively represented conflicting interests, and resolved the conflict against Ruffin in Brown's favor. Because the attorney failed to seek a plea bargain on Ruffin's behalf, his joint representation had an adverse affect on his representation of Ruffin. "On the facts of this case, the attorney's conduct of actual plea bargain negotiations for Brown, offering as part of the deal Brown's testimony against his own client, precluded effective plea bargaining on behalf of Ruffin and thus constituted an adverse impact on counsel's performance." *Ruffin*, 767 F.2d at 752.

The situations in *Zembowski* and *Ruffin* are readily distinguishable from the facts presented here. In both cases, the attorneys continued to actively represent both defendants after the conflict arose. Further, in *Zembowski*, the attorney affirmatively misrepresented facts to Zembowski, and continued to represent him and Thomas throughout trial. He also worked actively against Zembowski's interests in order to obtain Thomas' acquittal. During trial, he argued to the judge in chambers that he should dismiss Thomas: "if the Judge dismisses her out and leaves Zembowski, the Jury will come to the conclusion that there must be something about it that makes Zembowski guilty or the Judge would have let him out. *I am offering you a suggestion where you can get the major malefactor.*" *Zembowski*, 771 F.2d at 1060–61 (emphasis in original). In *Zembowski*, the attorney actively represented Thomas' interests in derogation of Zembowski's. In this case, Aungst's conduct was improper, but not so pervasive or actively harmful as the actions of the attorneys in *Zembowski* and *Ruffin*.

The Eleventh Circuit clarified *Ruffin* in *Smith v. Newsome*, 876 F.2d 1461 (11th Cir.1989). Gene Smith and his brother Danny were indicted for murder and burglary. They were represented by the same attorney without objection. After an eyewitness came forward and told police that Gene shot the victim, the government proposed to Danny that he testify against Gene. Their attorney discussed the offer with Danny but could not negotiate a plea agreement because Danny refused to testify. Ultimately both Gene and Danny were convicted at separate trials. *Smith*, 876 F.2d at 1162. Gene filed a habeas action, and argued that he received ineffective assistance because his lawyer represented conflicting interests by participating in plea bargain negotiations on behalf of Danny but not Gene. *Id.* at 1463.

The Eleventh Circuit found there was no Sixth Amendment violation because the joint representation did not prevent effective plea bargaining for either client. Plea negotiations for Gene were precluded, not because of Danny's negotiations, "but because the state was unwilling to bargain with Gene: evidence indicated that Gene was the trigger man, and the state was seeking the death penalty. On this record, [the attorney's] joint representation of Gene and Danny did not alter the possibility of a bargain for Gene." *Smith*, 876 F.2d at 1464. The court distinguished *Ruffin*, because the *Ruffin* court relied on the prosecutor's amenability to plea negotiations. *Id.* at 1463. Because the Smiths could demonstrate no adverse affect on their lawyer's performance, their Sixth Amendment rights were not violated. *Id.* The court thereby rejected any *per se* rule that whenever an attorney representing co-defendants negotiates a plea for one and not the other, the remaining defendant's Sixth Amendment rights are violated. Although the district court in the case at bar noted the *Smith* limitation, it was not persuaded that the Eleventh Circuit's restriction on *Ruffin* affected its analysis. 752 F.Supp. at 865 n. 3.

Like the Eleventh Circuit in *Smith,* we believe it is necessary to clarify some of our prior statements on this issue, and to emphasize that ineffective assistance claims stand or fall on the particular facts of the case. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. At the outset, we stress that it is highly improper and unethical for an attorney to represent co-defendants in any situation where one client's interests might compromise another's. We also note that Ronald Aungst has been disbarred for various breaches of his professional duties. *Matter of Aungst,* 467 N.E.2d 698, 701 (Ind.1984). Moreover, we reaffirm our view that negotiating a plea agreement for one client with a condition that he testify against another creates an actual conflict of interest. *See, e.g., Ross v. Heyne,* 638 F.2d 979, 983 (7th Cir.1980) ("A conflict of interest would also exist where one attorney represents co-defendants and one defendant agrees to provide evidence against the other in return for an advantageous plea bargain."); *Zembowski,* 771 F.2d at 1064.

But again, to satisfy the test imposed by *Cuyler,* a defendant who does not object to the trial court must show not only a conflict of interest, but that the conflict adversely affected his attorney's performance. Joint representation, the Supreme Court has explained, "is suspect because of what it tends to prevent the attorney from doing." *Holloway v. Arkansas,* 435 U.S. 475, 489–90, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). This observation leads directly to *Cuyler*'s requirement that a defendant show "an actual lapse in representation." *Cuyler,* 446 U.S. at 349, 100 S.Ct. at 1718–19. If the petitioner's counsel could not have done anything differently, if there was no alternative course of action, then there can be no Sixth Amendment violation, even if a conflict of interest existed. *See United States v. Cirrincione,* 780 F.2d 620, 629 (7th Cir.1985); *Lace v. United States,* 736 F.2d 48, 50 (2d Cir.1984). The premise of a defendant's claim that he was denied conflict-free assistance because of joint representation must be that his lawyer would have done something differently if there was no conflict. "If there was no

alternative, then there could be no 'ineffective choice' made by [the co-defendants'] counsel. [The defendants] must point to something significant that their lawyer would have done differently had he not represented both of them." *Cirrincione,* 780 F.2d at 629.

Cates cannot satisfy this burden. He cannot show that his counsel would (or could) have done anything more for him had he not represented both Cates and Hanaway. Aungst testified at the hearing for post-conviction relief that he did not provide the prosecutor with any information he received from Cates for Hanaway's benefit. Post–Conviction Hearing, S.C.R. at 128–29. Aungst also stated that when the government approached him about a possible plea bargain for Hanaway, it did not make any offer for Cates. *Id.* Cates has not produced any evidence that at the time Aungst was representing him, the government was willing to bargain with Cates or that Aungst assisted the government by providing it with privileged information about Cates. *Cf. Burger v. Kemp,* 483 U.S. 776, 785, 107 S.Ct. 3114, 3121, 97 L.Ed.2d 638 (1987) (prosecutor's unwillingness to bargain with defendant voids allegation that conflict of interest barred plea negotiations). As soon as the plea offer was made to Hanaway, Aungst notified Cates that he was withdrawing from his case. Cates retained a second attorney who represented him through the plea proceedings. At the post-conviction hearing, Cates testified that he was dissatisfied with Aungst's representation because he thought he and Hanaway were "both going to get the same kind of plea bargain." Post–Conviction Hearing, S.C.R. at 206. Cates testified that Aungst was ineffective because he got Hanaway a better deal. Hanaway received a six-year sentence; Cates received a fourteen-year sentence. Cates did not mention Hanaway's agreement to testify against him, and when asked, did not state that Hanaway's promise influenced his decision to plead. He did state that he believed Aungst used information he received from both him and Hanaway to obtain a better deal for Hanaway.

*Id.* at 210–11. Notwithstanding this belief, Cates stated that he pleaded guilty (on his counsel's advice) to avoid facing a habitual offender charge. The state dropped the charge in exchange for Cates' plea.

Although Aungst's actions were highly improper, we do not believe that the conflict "adversely affected the voluntary nature of Cates' plea." *Thomas v. Foltz*, 818 F.2d 476 (6th Cir.), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987) (defendant who pleads guilty must show counsel's actual conflict of interest adversely affected voluntary nature of plea). We believe the plea was voluntary and intelligent because Cates was being represented by conflict-free counsel at the time of the plea, counsel was aware of Aungst's actions, counsel advised Cates to plead guilty, and there is no allegation that the replacement attorney was ineffective. Post–Conviction Hearing, S.C.R. at 207, 211–12. In fact, at the guilty plea hearing, Cates stated that he was satisfied with his relationship with his new counsel, and the representation he provided. Plea Hearing of February 14, 1984, S.C.R. at 179. Cates pleaded guilty to avoid the habitual offender sentencing enhancement, not because he was facing trial alone or because Hanaway would be testifying against him. Post–Conviction Hearing, S.C.R. at 205, 206–07. We do not believe Aungst's misconduct violated Cates' Sixth Amendment rights because Cates was being advised by conflict-free, competent counsel when he entered his guilty plea, and there is no indication that Aungst's actions influenced the voluntariness of the plea.

Moreover, Cates has not alleged that he was disadvantaged because he wanted to plead first to obtain a better deal in exchange for testifying against Hanaway. Perhaps he has not raised this argument because the record indicates that even if he wanted to pursue such a strategy, that option was not available to him. We also note the possibility that the district court's ruling could allow criminal defendants to insulate themselves from prosecution by manipulating the conflict of interest protection afforded by the Sixth Amendment. Participants in criminal enterprises could escape prosecution by retaining a single attorney, telling him everything they have done, and having the attorney negotiate a plea for one at the "expense" of the others. Under the district court's ruling, the attorney's action would taint any future prosecution of the remaining offenders based upon the cooperation of the pleading defendant, notwithstanding the appointment of new conflict-free counsel. This strategy then, could effectively bar prosecution on any matter discussed with the first attorney.

■ We do not believe the Constitution demands this result. Trial courts should be alert for potential conflicts of interest, and caution jointly represented defendants when they appear. But this duty is limited, "unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Cuyler*, 446 U.S. at 347, 100 S.Ct. at 1717–18. In cases where there is no showing of prosecutorial overreaching, or that counsel chose to help only one client when options were available for both, or that counsel provided the state with privileged information, the conflict of interest does not violate the Sixth Amendment. Further, a co-defendant's testimony is not tainted so long as he has personal knowledge of all the matters he discusses. Of course, a co-defendant could not testify about matters he learned of only because of the joint representation.

■ Finally, even if Aungst's conduct compromised Cates' Sixth Amendment rights, Cates' voluntary and intelligent guilty plea waives any challenges to constitutional deprivations occurring prior to the plea. *Tollett v. Henderson*, 411 U.S. 258, 264, 93 S.Ct. 1602, 1606–07, 36 L.Ed.2d 235 (1973) (citing *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970)). In many cases, an attorney's conflict of interest will impair his ability to effectively advise his client during plea proceedings,

thereby rendering a guilty plea unintelligent. But as we have discussed, Cates' plea was intelligent (as well as voluntary) because he received effective assistance from Tsoutsouris when he pleaded guilty. Under *Brady* and its progeny, then, Cates' guilty plea

> represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett*, 411 U.S. at 266, 93 S.Ct. at 1607–08. There has been no allegation, much less any showing that Tsoutsouris' representation fell below the professional standard imposed by *Strickland*, and we conclude that Cates' voluntary and intelligent plea waived his Sixth Amendment claim.

For the foregoing reasons, the judgment of the district court is

REVERSED.