**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Sidney SPRINGS, Defendant–Appellee.**

No. 92–2289.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1993.

Decided March 16, 1993.

Rehearing and Rehearing En Banc Denied May 12, 1993.

Adam Bourgeois (argued), Chicago, IL, for petitioner-appellee.

Laurie J. Barsella, Asst. U.S. Atty., Patrick B. Murray, Lance C. Malina, Asst. U.S. Atty. (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for respondent-appellant.

Before CUMMINGS, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Sidney Springs, a member of Chicago's Fire Department, offered $12,500 for a police officer's aid in stealing six kilograms of cocaine from a fellow purveyor of illegal drugs. The officer pretended to accept the bribe but alerted federal officials, who thwarted the plan. Springs pleaded guilty to three felony charges, including extortion and attempting to possess the six kilograms of cocaine. The Sentencing Guidelines prescribe a range of 135–168 months for Springs' offenses; in February 1989 the district court imposed a sentence of 135 months' imprisonment. His lawyer asked the district judge to give a sentence lower than 135 months, to which the judge replied: "[T]here isn't anything in this case, anything that suggests any legal reason that I could go outside the Guidelines." Springs did not appeal.

While serving his sentence, Springs offered some information about persons who had not been involved in the offenses to which he pleaded guilty. Although this information did not lead to any prosecutions or convictions, the prosecutor filed a motion under Fed.R.Crim.P. 35, authorizing the district judge to reward the information with a lower sentence. In February 1990 the judge shaved 15 months off the sentence, leaving Springs with 120 months' imprisonment.

One year later the same judge vacated Springs' sentence altogether, invoking 28 U.S.C. § 2255. The judge explained:

At the time of [Springs'] plea the guidelines were new, and this court ... believed it had very little discretion to de-

part from them. Subsequent case law has demonstrated that a district court has more discretion to make a departure than this court had realized at the time it had sentenced [Springs]. Because of this mistaken belief at this critical time, this court will grant the defendant's petition and vacate his sentence and allow him to be resentenced.

The court released Springs from prison, on condition that he remain at home. More than a year passed. Eventually, in April 1992, the court resentenced Springs to 52 months' imprisonment. Back in 1988 the prosecutor had offered, and Springs had rejected, a plea bargain under which his sentence would be 72 months, in exchange for help, including testimony at trial, in convicting other members of the drug ring with which Springs was affiliated. Although Springs never gave any such assistance, the district court started with the prosecutor's offer and made a series of deductions. The judge did not mention the Guidelines during resentencing. The United States contends that the court lacked authority to vacate the sentence and that at all events the new sentence, determined without reference to the Guidelines, is invalid.

Springs was sentenced 16 months after the Guidelines went into effect, almost five years after the enactment of the Sentencing Reform Act. If Springs believed that in February 1989 Judge Duff misunderstood the extent of his discretion, he could have presented this argument to us on appeal. *United States v. Poff,* 926 F.2d 588, 590–91 (7th Cir.1991) (in banc). He did not. Unsurprisingly, the United States contends that Springs' acquiescence forfeits any entitlement to collateral relief. E.g., *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *Sunal v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); *Johnson v. United States,* 838 F.2d 201 (7th Cir.1988). The prosecutor made the same point in urging the district judge to deny the petition. The district judge inexplicably ignored the subject.

There is a further, and deeper, problem. Section 2255 does not authorize judges to revise all decisions that they have come to rue. Its domain is more limited:

A prisoner in custody ... [may obtain relief] upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack....

Was the sentence "imposed in violation of the Constitution or laws of the United States"? Springs does not so contend, and there is no basis for such a conclusion. Was the court "without jurisdiction to impose such sentence"? Hardly. Was the sentence "in excess of the maximum authorized by law"? Not remotely. Is the sentence "otherwise subject to collateral attack"? This language does not grant district judges a visitorial power. "[U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack ... [is] far more limited.... The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently resulted in a complete miscarriage of justice.'" *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979), quoting from *Hill,* 368 U.S. at 428, 82 S.Ct. at 471. See also, e.g., *Reed v. Clark,* 984 F.2d 209 (7th Cir.1993).

A sentence within the Guidelines—which Springs concedes he received—cannot be a "complete miscarriage of justice." Although a district judge's misunderstanding of the options for sentencing is regrettable, misapprehending the scope of one's discretion is some distance from a "fundamental defect". *Addonizio* illustrates the point. During the years before the Sentencing Reform Act of 1984, when most prisoners were eligible for parole after serving one-third of their sentences, many district judges believed that parole was automatic unless the prisoner misbehaved in custody. Judges routinely sentenced defendants to three times the term they wanted them to serve. Often they, and the defendants, were taken aback. In 1973 the

Parole Commission published a set of guidelines articulating its policies. These guidelines revealed that the Commission based its decisions on the offenders' conduct rather than the district judges' sentences, so that, for example, persons convicted of selling the same quantity of drugs and having the same criminal history would (to the extent the sentences actually imposed allowed) spend the same time in prison. This meant release at the one-third point for prisoners who had received long sentences, service of the full term by those who had received short sentences. And the Commission revealed that for some kinds of crime it regularly required offenders to serve most or all of their terms. One of these categories was corrupt behavior by a public official.

Hugh Addonizio, a Member of Congress convicted of extorting payments from persons seeking official favors, was sentenced in 1970 to 10 years' imprisonment. The Parole Commission ordered Addonizio held to the expiration of his term. Expressing shock, the district judge invoked § 2255 and reduced Addonizio's sentence to time served. This reduction was necessary, the judge explained, to prevent Addonizio's incarceration from greatly exceeding what the judge had contemplated. The Supreme Court held, however, that § 2255 confers no such power on district judges. Addonizio's conviction and sentence were lawful; § 2255 does not permit judges to revise sentences that reflect misunderstandings. "[T]here is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." 442 U.S. at 187, 99 S.Ct. at 2241.

*Addonizio* controls this case. If a post-sentencing change that dramatically affects the time to be served does not authorize resentencing under § 2255, then post-sentencing appellate opinions that suggest to the district judge that he possesses additional discretion in sentencing do not authorize resort to § 2255. The parole guidelines stunned many judges, making their sentences look unwise in retrospect. Even so, *Addonizio* held, judges may not use hindsight to hand out new sentences.

Changes in the law since *Addonizio* reduce rather than enlarge the scope of district judges' post-sentencing authority. The version of Fed.R.Crim.P. 35 applicable to pre-Guidelines sentences allowed district judges to reduce sentences in response to motions filed as late as 120 days after the appellate mandate, which as a practical matter left district judges with several years' of superintendence. Rule 35 was amended by the Sentencing Reform Act to eliminate this authority. Judges may correct technical errors within seven days. Thereafter, sentences under the Guidelines may be reduced only on motion of the prosecutor (or when illegal); district judges were stripped of authority to rethink their sentences after imposition. Section 2255 cannot be used as a back door to the discretion that district judges used to possess under Rule 35. Sentences under the Guidelines are supposed to be stable, without parole or the possibility of belated entreaty to the sentencer's mercy, letting the prisoner know from the outset how much time he must serve. The district court's approach, by contrast, makes every sentence open to change whenever a new appellate decision (or perhaps a lecture at a judges' workshop) leads the judge to see things in a new light.

■ District judges' misunderstandings and misapprehensions about the Guidelines do not authorize relief under § 2255. This conclusion knocks out the only reason the judge gave for his decision. As is his right, Springs advances another argument in support of the judgment. He contends that the retained lawyer who represented him during the plea and sentencing furnished ineffective assistance when counsel did not insist that Springs accept the proffered plea bargain. According to Springs, his lawyer advised him that the judge was likely to give him a sentence substantially lower than 72 months. Instead of 72 months' imprisonment, Springs ended up with 120. Surely that is ineffective, his current lawyer contends.

Further proceedings on this subject would be a waste of time, because Springs has no prospect of establishing the "prejudice" that is an element of his burden under the sixth amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We may suppose that counsel's advice was sub-par, although this is far from clear. Many defendants strongly resist testifying against their confederates, and lawyers need not browbeat clients who prefer not to turn state's evidence. And whether counsel actually told Springs that the judge could or would give him a sentence below 72 months has never been determined. The fact remains that Springs received a sentence that the Guidelines prescribe as appropriate (indeed, as low) for his offense.

Not every adverse consequence of counsel's choices is "prejudice" for constitutional purposes. "[A]n analysis focussing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993). Cf. John C. Jeffries, Jr. & William J. Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus,* 57 U.Chi.L.Rev. 679 (1990). The guarantee of counsel in the sixth amendment is designed to promote fair trials leading to accurate determinations of guilt or innocence. The Constitution does not ensure that lawyers will be good negotiators, locking in the best plea bargains available. *Cates v. Superintendent,* 981 F.2d 949, 955–56 (7th Cir.1992). Cf. *Burger v. Kemp,* 483 U.S. 776, 785, 107 S.Ct. 3114, 3121, 97 L.Ed.2d 638 (1987). Springs entered voluntary pleas of guilty to three serious crimes. The sentence he received was within the Guidelines and has since been reduced so that it is 15 months below the bottom of the prescribed range. Failure to make a deal that "beats" the Guidelines does not demonstrate ineffective assistance, and we held in *United States v. Arvanitis,* 902 F.2d 489, 494 (7th Cir.1990), that a lawyer's incorrect appreciation of the Guidelines' effects does not establish a violation of the sixth amendment. Springs

had no entitlement to a discount of any kind, no right to be treated more leniently than other criminals unlucky enough to be without information for which the prosecutor is willing to pay. Cf. *Wade v. United States,* —— U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992); *United States v. Smith,* 953 F.2d 1060 (7th Cir.1992); *United States v. Brigham,* 977 F.2d 317 (7th Cir.1992). The prosecutor offered a discount in exchange for Springs' assistance, which was not forthcoming. After rejecting the prosecutor's offer, Springs was treated exactly as the law prescribes. The "prejudice" component of ineffective assistance "focusses on the question whether counsel's deficient performance renders the result of the [proceeding] unreliable or fundamentally unfair.... Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell,* —— U.S. at ——, 113 S.Ct. at 844. Prosecutors need not offer discounts and may withdraw their offers on whim. Defendants have no substantive or procedural right to bargain-basement sentences. *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). As a matter of law, Springs did not suffer "prejudice" from the representation he received.

The sentence of 120 months' imprisonment imposed on February 20, 1990, is restored to force without the need for resentencing. Whether Springs receives credit on this sentence for the time spent under house arrest is for the Attorney General to determine in the first instance. *United States v. Wilson,* —— U.S. ——, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).

REVERSED.